COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Haley
Argued at Richmond, Virginia

KEITH ORLANDO YOUNG

                                                            OPINION BY
v.        Record No. 2216-09-2                    JUDGE JAMES W. HALEY, JR.
                                                            MARCH 1, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
John R. Alderman, Judge Designate

Benjamin H. Woodbridge, Jr. (Woodbridge, Ventura & Coleman,
P.C., on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


## I.  INTRODUCTION

Appealing his conviction for driving under the influence, a second offense within five

years, in violation of Code § 18.2-266, Keith Orlando Young argues that because he was not

arrested within three hours of the offense, the certificate of analysis used to convict him was

inadmissible under Virginia's implied consent law.  We disagree and affirm.

## II.  BACKGROUND

On October 24, 2008, at approximately 7:00 p.m., Young ran a stop sign and crashed into

an SUV.[1]  Young's car landed in a ditch with the driver's side door suspended in the air.

Emergency personnel extricated him from the passenger side of the vehicle and slid him onto a

backboard.  Young was bleeding from his head and, according to emergency personnel, had a

"very strong" odor of beer emanating from his person.  His speech was slurred, and he could not

---

[1] Young was also convicted of running a stop sign in violation of Code § 46.2-821, but
does not challenge that conviction on appeal.

tell them his name. Young became combative and emergency workers "had to tie his arms down" and strap him to the backboard.

At approximately 7:40 p.m., Virginia State Trooper G.F. Finch arrived at the scene and saw Young "fighting the medical personnel." When he approached, Finch noticed Young had glassy eyes, slurred speech, and a "strong odor of alcoholic beverage on his breath." When questioned by Trooper Finch, Young admitted he had been drinking prior to driving the vehicle and that the accident occurred at approximately 7:00 p.m. Trooper Finch observed in Young's vehicle two bottles of brandy and a cooler containing two cans of beer, one of which was open.

Trooper Finch followed the ambulance transporting Young to Mary Washington Hospital. They arrived at approximately 9:20 p.m., and Young was promptly admitted. While Young was lying in the hospital bed hooked to IVs, Finch told him he was under arrest and advised him of his Miranda rights and the implied consent law. Finch testified Young was not free to leave at that point. Young verbally consented to have his blood drawn. After Finch took possession of vials of Young's blood, he released Young from custody on a Virginia Uniform Summons pursuant to Code § 19.2-73. At the time of the offense, Code § 19.2-73 provided, in pertinent part, "If any person under suspicion for driving while intoxicated has been taken to a medical facility for treatment or evaluation of his medical condition, the arresting officer at the medical facility may issue . . . a summons for a violation of Code § 18.2-266."

In November 2008, the Department of Forensic Science completed a certificate of analysis after performing tests on the blood sample drawn from Young at the hospital. The certificate indicated that Young's blood alcohol content on the night of the accident was 0.22% by weight by volume.[2]

_____

[2] Code § 18.2-266, the statute under which Young was convicted, prohibits driving with a blood alcohol concentration of "0.08 percent or more by weight by volume . . . ."

At trial, Young objected to the admission of the certificate of analysis. He contended that the certificate was inadmissible because he was not under arrest as required by Code § 18.2-268.2 before his blood sample was taken. The trial court overruled Young's motion stating, "I have to give plain meaning to the terms of the statute, and under § 19.2-73, paragraph B, the trooper has the authority, after he's placed him under arrest, to issue a summons, and that's what he did, so I'm going to overrule your motion." At the close of evidence, the trial court overruled Young's motion to strike the evidence and found him guilty of driving while intoxicated.

### III. ANALYSIS

Code § 18.2-268.2, Virginia's implied consent statute, provides in pertinent part:

> Any person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood . . . taken for a chemical test if he is *arrested* for driving while intoxicated within three hours of the alleged offense.

(Emphasis added).

On appeal, Young argues that because the arresting officer "did not, at any time, accompany his arrest of Appellant with *any physical act* then Appellant was not subject to the implied consent law." Appellant's Br. at 7 (emphasis added). Thus, Young continues, absent a timely arrest, the "Commonwealth [had] no right to collect the sample in the first place and, *a fortiori*, even less right to offer into evidence test results based on the sample." Cutright v. Commonwealth, 43 Va. App. 593, 601, 601 S.E.2d 1, 5 (2004). See also Overbee v. Commonwealth, 227 Va. 238, 243, 315 S.E.2d 242, 244 (1984) (stating an untimely arrest results in exclusion of test results). Indeed, "failure to comply with Code § 18.2-268.2 or companion statutes precludes introduction of the relevant test results in proof of DUI." Williams v. Commonwealth, 38 Va. App. 414, 420, 565 S.E.2d 328, 331 (2002). See also Smith v.

Commonwealth, 32 Va. App. 228, 233, 527 S.E.2d 456, 459 (2000) (noting unlawful arrest negates implied consent and renders test results inadmissible).

Under common law, the "mere words of an officer stating to a suspect that he is 'under arrest' are not sufficient to constitute an arrest." Bristol v. Commonwealth, 272 Va. 568, 573, 636 S.E.2d 460, 463 (2006) (citing California v. Hodari D., 499 U.S. 621, 627 (1991)).[3] Quoting from Professor Perkins's seminal work on the subject, Hodari D. held the common law also requires the officer to have some physical contact with the arrestee (even a slight "touching" suffices) or, absent such contact, the arrestee must submit to the officer's assertion of authority. Hodari D., 499 U.S. at 626-27 (citing Rollin M. Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 206 (1940)); see also Hall v. Commonwealth, 280 Va. 566, 571, 701 S.E.2d 68, 71 (2010), aff'g, 55 Va. App. 451, 686 S.E.2d 554 (2009) (applying these common law principles, holding an individual was in custody for purposes of the escape statute, Code § 18.2-478, when the officer "spoke words of arrest and actually touched Hall for the stated purpose of arrest").

While an officer's mere words, telling a suspect he is under arrest, are insufficient to constitute an *arrest*, Hodari D., 499 U.S. at 626, they *do* constitute an assertion of his authority. It is axiomatic that where the officer does not make any assertion of authority, a suspect cannot submit to him and, therefore, there can be no arrest. See, e.g., Sprouse v. Commonwealth, 53 Va. App. 488, 491, 673 S.E.2d 481, 482 (2009) (finding no arrest because the officer did not use any physical force, and "[a]t no point following the accident did [the officer] indicate to [the suspect] that he was under arrest").

_____

[3] Though inconclusive by itself, the statement "*you are under arrest*" nonetheless constitutes evidence of "'an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody.'" State v. Rocheleau, 378 A.2d 1381, 1383 (N.H. 1977) (quoting State v. Wolfson, 356 A.2d 692, 694 (N.H. 1976)); accord Bell v. State, 881 S.W.2d 794, 799 (Tex. App. 1994) ("A reasonable person, injured and lying on a hospital stretcher, hearing from a police officer the words 'you are under arrest' and 'placed under arrest,' could conclude that he was not free to leave.").

Common law principles of arrest, however, must be applied in harmony with applicable statutes. "A number of the states," Perkins explained, have enacted statutes authorizing an officer "to issue a summons himself, as the issuance of a 'ticket' to appear for a violation of the traffic laws." Perkins, *supra*, at 207. Statutes enacted for this purpose "may require the officer to make an arrest *prior* to the issuance of such a summons," id. (emphasis added), or they may authorize the issuance of a summons *instead* of an arrest. These two statutory approaches — issuing a summons either "in lieu of arrest" *or* "after an initial arrest," Knowles v. Iowa, 525 U.S. 113, 115 (1998) (summarizing an Iowa statute) — determine the necessity, timing, and scope of an arrest.

The General Assembly has enacted several such statutes. Code § 19.2-74(A)(1), for example, authorizes an "arresting officer" to issue a summons releasing an arrestee from the officer's custody under certain conditions. If the "arresting officer" reasonably believes the arrestee will disregard the summons or cause harm to himself or others, the arrestee cannot be released from the officer's custody. Id. If the arrestee, after being released, fails to later appear in court as directed by the summons, he may be charged with failure to appear in addition to "the charge upon which he was originally arrested." Code § 19.2-74(A)(3); see also Code § 46.2-936 (authorizing release on summons for a misdemeanor charge).

A similar statute governs suspected drunk drivers who are "taken to a medical facility" for treatment or evaluation. Code § 19.2-73(B). The version of Code § 19.2-73(B) in effect at the time of Young's arrest authorized an "arresting officer" to issue a summons "in lieu of securing a warrant" for a suspected drunk driver who has been taken to a medical facility.[4] This

---

[4] In 2010, the General Assembly amended Code § 19.2-73 to give officers the discretion to issue a summons "without having to detain" the suspect under medical attention if "the officer has probable cause to place him under arrest." 2010 Va. Acts ch. 840. Because this scenario does not involve an actual arrest followed by a release from arrest, the 2010 amendment added that the "issuance of such summons shall be deemed an arrest for purposes of Article 2

- 5 -

statute recognizes the reality that an individual receiving medical treatment cannot be taken into physical custody. If the arrestee later violates the summons by not appearing in court as directed, he may be convicted for failing to appear as well as for the DUI "charge upon which he was *originally arrested*." Code § 19.2-73(C) (emphasis added).

"It is a settled rule of construction that all statutes *in pari materia* should be read and construed together, as if they formed parts of the same statute and were enacted at the same time." Dillard v. Thornton, 70 Va. (29 Gratt.) 392, 396 (1877). The "doctrine of *pari materia* teaches that 'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.'" Dep't of Motor Vehicles v. Wallace, 29 Va. App. 228, 234, 511 S.E.2d 423, 425 (1999) (quoting Moreno v. Moreno, 24 Va. App. 190, 198, 480 S.E.2d 792, 796 (1997)). Therefore, "proper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes." Hulcher v. Commonwealth, 39 Va. App. 601, 605, 575 S.E.2d 579, 581 (2003).

Under these catch-and-release statutes, the summons serves as "a *post-arrest document* which facilitates prompt release upon a promise to appear." Davis v. Commonwealth, 17 Va. App. 666, 671, 440 S.E.2d 426, 430 (1994) (emphasis added) (voiding summons issued by an officer not based on a valid arrest); see Lovelace v. Commonwealth, 258 Va. 588, 596, 522 S.E.2d 856, 860 (1999) (describing "an 'arrest' that is effected by issuing a citation or summons rather than taking the suspect into custody"). Reading these statutes *in pari materia*, it is clear that while an arrest under Code § 19.2-73(B) is not a traditional custodial arrest requiring a

---

(§ 18.2-266 et seq.) of Chapter 7 of Title 18.2." Id. In doing so, the General Assembly answered the question raised but not decided in Sprouse, 53 Va. App. at 491-93, 673 S.E.2d at 482-83, whether a drunk driving suspect is "arrested when he signed the summons" where, unlike our case, the officer never expressly declared the suspect "was under arrest."

suspect to undergo the booking process and appear before a magistrate, it is an *arrest* nonetheless.[5]

It is the act of arrest itself that "brings into consideration the issuance of a summons," which thereafter "makes provision for the expeditious *release of an arrested person* without appearance before an issuing authority and a bail determination." Davis, 17 Va. App. at 671, 440 S.E.2d at 430 (emphasis added); cf. Rhodes v. Commonwealth, 29 Va. App. 641, 645 n.6, 513 S.E.2d 904, 907 n.6 (1999) (*en banc*) (holding a search incident to arrest is not authorized "where by statute a state has 'abjured the authority to execute *custodial* arrests'" for minor offenses (citation omitted) (emphasis added)); People v. Bland, 884 P.2d 312, 318 (Colo. 1994) (noting that a statute that "mandates the issuance of a notice or summons, however, is consistent with a non-custodial arrest").

In this case, the trooper declared Young under arrest for violating Code § 18.2-266. After doing so, the trooper informed Young of his Miranda rights as an arrestee. The trooper also read Young the statutory implied consent notice, see Code § 18.2-268.3(B), which expressly reaffirmed that Young had been "arrested" by an "arresting officer." Declaration and Acknowledgment of Refusal — Breath/Blood Test (Form DC-233).[6] Young submitted to a

---

[5] The dissent's position as we understand it is as follows: (1) Despite enacting Code §§ 19.2-73 and 19.2-74, the legislature did not change the common law of arrest. We conclude these statutes augment the submission element of the common law of arrest. In addition, the dissent maintains that (2) under those statutes, one cannot be "arrested" until one signs a document, the summons, upon which § 19.2-74 requires the officer to "forthwith release him from custody." In short, the dissent appears to maintain an oxymoron: you are not arrested until you are released from custody.

[6] Code § 18.2-268.3(B) provides: "The Office of the Executive Secretary [OES] of the Supreme Court shall make the form available on the Internet and the form shall be considered an official publication of the Commonwealth for the purposes of § 8.01-388 [authorizing judicial notice]." OES published the form at http://www.courts.state.va.us/forms/district/home.html. See also Michael C. Tillotson & Patrick L. Bales, Virginia DUI Law: Understanding the Scientific, Medical, Technological, and Legal Aspects of a DUI Case App. C, at 598 (2010-11 ed.).

blood test.  The trooper later released Young from the arrest under Code § 19.2-73(B).  The summons signed by Young and the arresting officer identified the "Arrest Location" as Mary Washington Hospital and the "Arrest Date" as October 24, 2008.  The summons was not an arrest warrant.  It did not *cause* Young to be arrested.  To the contrary — it *released* Young from arrest.  The issuance of the summons under Code § 19.2-73(B), releasing Young from arrest, served as a statutory marker confirming Young's ongoing submission to the arresting officer's authority.  By signing the summons, Young acknowledged his continuing submission to the arrest and his promise to appear in court as a condition for being released from arrest.[7]

Young claims this reasoning conflicts with <u>Bristol</u>.  We disagree.  <u>Bristol</u> did not involve a suspect arrested and thereafter released under Code § 19.2-73(B) or its statutory companion, Code § 19.2-74.  For that reason, there was no need for <u>Bristol</u> to mention, much less analyze, the statutory interplay between the catch-and-release statutes and the implied consent statute.  Instead, <u>Bristol</u> relied entirely on common law arrest principles and deemed the officer's actions insufficient to constitute an arrest because he "did not act in a manner that could be construed as constraining Bristol's personal liberty."  <u>Bristol</u>, 272 Va. at 574, 636 S.E.2d at 463.

---

[7] The dissent appears to disregard the facts relevant to the arrest determination in <u>Bristol</u>.  The Court in <u>Bristol</u>, immediately prior to concluding "Bristol's consent to the blood test did not constitute a submission to police authority resulting in arrest," 272 Va. at 574, 636 S.E.2d at 463, recited the facts relevant to their determination, many of which took place *after* the blood draw: that "Officer Doyle merely accompanied Bristol to the emergency room . . . then left the hospital, *taking no action to constrain Bristol's personal liberty*. . . . Bristol *left the hospital on his own, and the police did not take any immediate action to restrain him.*"  <u>Id.</u> (emphasis added).  Here, despite that Young's liberty was already physically restrained by his connection to IVs, Trooper Finch remained with Young after the blood sample was drawn, advised Young of the charge pending against him, and obtained his signature on the summons prior to departing from the hospital.  The dissent maintains that these actions by Trooper Finch did not "constrain Young's personal liberty."  Short of physically touching Young, who was already rendered immobile, it is difficult to think of a greater restraint on Young's physical liberty than the trooper's unyielding presence while he was undergoing medical treatment.

Unlike <u>Bristol</u>, this case turns directly on the manner in which Code §§ 19.2-73(B) and 19.2-74 augment the common law principles of arrest. Reading these statutes *in pari materia* with the implied consent statute, an arrest followed by a release on summons satisfies the requirement of "constraining" the arrestee's personal liberty, <u>Bristol</u>, 272 Va. at 574, 636 S.E.2d at 463, for purposes of implicating the statutory duty to provide a blood or breath sample. The very fact that Young was formally released with a summons indicates he had been formally arrested. To conclude otherwise — particularly on the ground that the arresting officer must at some point *physically touch* the arrestee — adds an aberrational gloss to Code §§ 19.2-73(B) and 19.2-74. In this respect, we agree with the reasoning of the Supreme Judicial Court of Maine in a similar case in which a hospitalized DUI arrestee was released on a summons:

> Defendant's counsel concedes that defendant would have been validly arrested if [the arresting officer] had also merely placed his hand on defendant's arm or shoulder. *There is no reason for making the validity of an arrest in the present circumstances turn on such an insignificant formality, reminiscent of the medieval livery of seisin . . . .* We also find no merit in defendant's contention that the fact that the Uniform Traffic Ticket issued to him stated that he was "summonsed" means that he was never arrested or negates any arrest that was made. *The arrest that did take place and the issuance of the ticket were not contemporaneous. It is not disputed that defendant was released from custody at the moment he received the ticket. Until that moment, however, he remained under arrest.*

<u>State v. Donahue</u>, 420 A.2d 936, 938 (Me. 1980) (emphasis added). To be sure, "[a]pplying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries." <u>Smither v. Dir. of Revenue</u>, 136 S.W.3d 797, 799 (Mo. 2004) (citation omitted); <u>State v. Setter</u>, 721 S.W.2d 11, 17 (Mo. Ct. App. 1986) ("The facts reveal that the officer placed respondent under arrest and read the <u>Miranda</u> warning. There was no need to *physically restrain* respondent because his injuries prevented him from leaving the hospital." (emphasis in original)).

## IV.  CONCLUSION

Under the facts of this case, the implied consent statute applied to Young's arrest and authorized the admission of the BAC test results into evidence.  Like the trial court, we disagree with Young's assertion that the trooper could not request a blood sample without first engaging in some "physical act," Appellant's Br. at 7, during the period in which Young was under arrest. We thus affirm his conviction.

<u>Affirmed.</u>

Humphreys, J., dissenting.

I respectfully dissent from the majority's holding that Young was under arrest prior to the application of the implied consent law, and thus would hold that the circuit court erred in admitting the evidence of the certificate of Young's blood alcohol analysis.

"We review *de novo* the issue of law whether the undisputed facts before us establish that the officers effected an arrest of [appellant]." Bristol v. Commonwealth, 272 Va. 568, 573, 636 S.E.2d 460, 463 (2006) (citations omitted). Virginia's implied consent statute, Code § 18.2-268.2, provides in pertinent part that,

> Any person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, *if he is arrested* for violation of § 18.2-266 . . . within three hours of the alleged offense.

(Emphasis added). The Supreme Court explained Code § 18.2-268.2 arrest requirements as follows:

> Under these provisions, a driver must be arrested within three hours of an offense before that driver may be required to submit to a breath or blood test. Because the driver's timely arrest triggers the statutory consent requirement, the arrest *must be* completed *before* the driver may be required to take the test.

Bristol, 272 Va. at 574-75, 636 S.E.2d at 464 (emphasis added). Thus, a valid arrest prior to taking the test is statutorily required as a prerequisite to the admission into evidence of any blood or breath test results under Virginia's implied consent law. See Roseborough v. Commonwealth, 281 Va. 233, 239 704 S.E.2d 414, ___ (2011) ("Because Roseborough was not validly under arrest for violation of Code § 18.2-266 when his breath was tested, the implied consent law did not apply and its provisions permitting the certificate of analysis to be admitted into evidence were not triggered.").

Notwithstanding the contrary position taken by the majority, our Supreme Court and this Court have expressly held that, "[g]enerally, 'the common law relating to arrest is the law on that subject in Virginia.'" Hall v. Commonwealth, 55 Va. App. 451, 454-55, 686 S.E.2d 554, 555-56 (2009) (quoting Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933)), aff'd, 280 Va. 566, 701 S.E.2d 68 (2010) (applying common law principles of arrest).[8] We have previously adhered to this precedent noting that, "the Supreme Court of Virginia has held that if the arrest requirements of implied consent are not satisfied, any certificate of analysis obtained pursuant to Code § 18.2-268.2 is inadmissible at trial." Sprouse v. Commonwealth, 53 Va. App. 488, 492, 673 S.E.2d 481, 482 (2009) (citing Bristol, 272 Va. at 575, 636 S.E.2d at 464). "The mere words of an officer stating to a suspect that he is 'under arrest' are not sufficient to constitute an arrest." Bristol, 272 Va. at 573, 636 S.E.2d at 463 (citing California v. Hodari D., 499 U.S. 621, 626 (1991); State v. Oquendo, 613 A.2d 1300, 1309-10 (Conn. 1992)).

---

[8] While recognizing their existence, the majority departs from the application of the common law principles relating to arrest, and justifies this departure by a comparison of the "catch-and-release" provisions of Code §§ 19.2-73(B) and 19.2-74 with the implied consent statutes in support of its conclusion that in reading them *in pari materia*, "an arrest followed by a release on summons satisfies the requirement of 'constraining' the arrestee's personal liberty, Bristol, 272 Va. at 574, 636 S.E.2d at 463, for purposes of implicating the statutory duty to provide a blood or breath sample. The very fact that Young was formally released with a summons indicates he had been formally arrested." However, this approach ignores the predicate question of whether an arrest actually occurred such that a "release" followed. Furthermore, the majority's departure from the application of the common law principles of arrest on the ground that statutes, when read *in pari materia implicitly* augment the application of longstanding common law principles, is a holding built upon a quicksand foundation that foreshadows the possibility of unintended consequences in conflict with the long held bedrock jurisprudential and statutory principle embodied in Code § 1-200 that the common law remains in full force and effect unless clearly altered by statute. In addition, Code §§ 19.2-73(B) and 19.2-74 do not define what constitutes an "arrest," but merely refer to the officer as the "arresting officer." Thus, the common law principles of an arrest are still applicable even in reading the statutes *in pari materia*.

Under common law, "[a]n arrest occurs when an officer physically restrains a suspect or, in the absence of physical restraint, the suspect submits to the officer's assertion of authority and purpose to arrest." Id. (citing Hodari D., 499 U.S. at 626; White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004); Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970)). An arrest "'is accomplished by merely touching, however slightly, the body of the accused, by the party making the arrest and for that purpose . . . .'" Hodari D., 499 U.S. at 625 (quoting A. Cornelius, Search and Seizure 163-64 (2d ed. 1930) (footnote omitted)). On the other hand,

> [a]n arrest completed by a suspect's submission to police authority
> must manifest the suspect's complete surrender of his personal
> liberty to the officer's authority. As explained in Howard, "an
> arrest is made by the actual restraint of the person of the defendant
> or by his submission to the custody of an officer."

Bristol, 272 Va. at 573-74, 636 S.E.2d at 463 (quoting Howard, 210 Va. at 677, 173 S.E.2d at 832).

First, I address the summons issued pursuant to Code § 19.2-73(B). The majority contends initially that in reading Code §§ 19.2-73 and 19.2-74 *in pari materia*, "it is clear that while an arrest under Code § 19.2-73(B) is not a traditional custodial arrest requiring a suspect to undergo the booking process and appear before a magistrate, it is an *arrest* nonetheless." The majority then concludes "[t]he summons was not an arrest warrant. It did not *cause* Young to be arrested. To the contrary – it *released* Young from arrest." From this initial premise, the majority uses reverse logic to conclude that, since one cannot be released unless first arrested, Code §§ 19.2-73(B) and 19.2-74 must augment the common law principles of arrest because in "[r]eading these statutes *in pari materia* with the implied consent statute, an arrest followed by a release on summons satisfies the requirement of 'constraining' the arrestee's personal liberty, Bristol, 272 Va. at 574, 636 S.E.2d at 463, for purposes of implicating the statutory duty to

provide a blood or breath sample."  In other words, under the analysis of the majority, if a summons has been issued, an arrest must *ipso facto* have occurred previously.  However, the facts in the record in this case provide little support to the majority's supposition that the issuance of a summons means that an arrest must have occurred prior to the blood sample being taken, or that the issuance of the summons and subsequent signature by Young exemplify a submission to an arresting officer's show of authority.

It is important to note that Trooper Finch issued the summons *after* the blood sample was taken, and not prior to it.  As our Supreme Court has held, "the arrest must be completed before the driver may be required to take the test."  Bristol, 272 Va. at 574-75, 636 S.E.2d at 464.  Thus, the majority's emphasis on the issuance of the summons is misplaced, and is of little use as a crutch to support a holding that a lawful arrest occurred in this case prior to the taking of the blood sample.  See Sprouse, 53 Va. App. 488, 673 S.E.2d 481 (holding the trial court erred in admitting the certificate at trial because the purported arrest – signing the summons – took place after the blood test was administered).  Further, the fact that a summons is "a post-arrest document which facilitates prompt release upon a promise to appear" *does not*, in the alternative, stand for the proposition that because a summons was issued and signed then, *a fortiori*, a lawful arrest actually occurred at some earlier time.  Davis v. Commonwealth, 17 Va. App. 666, 671, 440 S.E.2d 426, 430 (1994).  For the same reasons, I also cannot subscribe to the majority's implicit suggestion that Young's acceptance of the summons and his consent to have the blood sample taken constitute a sort of *nunc pro tunc* submission to Trooper Finch's authority at that time or on some earlier occasion.  Bristol, 272 Va. at 575, 636 S.E.2d at 464 ("Thus, based on this statutory language, a driver's mere agreement to take a breath or blood test cannot constitute a functional component of the driver's arrest.").

Lastly, while Code § 19.2-73, as amended in 2010, specifically provides that "[t]he issuance of such summons shall be deemed an arrest for purposes of Article 2," this still does not satisfy the requirement in Code § 18.2-268.2 that the arrest be completed *prior* to taking the test. Assuming, arguendo, that the issuance of a summons in this case constitutes contemporaneous evidence of an arrest, any such "arrest" would then have occurred *after* the blood sample had been taken. Thus, the summons has no bearing on whether an actual arrest occurred either by physical restraint or submission to the officer's authority *prior* to the test being taken – as required by Code § 18.2-268.2.[9]

Contrary to the majority's contention, I do not believe that Code §§ 19.2-73(B) and 19.2-74 augment the common law principles of arrest or indeed have any application at all to a determination of whether an arrest occurred prior to the taking of the blood sample in this case.[10] Rather, in my view, the outcome of the issue presented in this appeal is entirely controlled by the

---

[9] The majority holds that "[t]he issuance of the summons under Code § 19.2-73(B), releasing Young from arrest, served as a statutory marker confirming Young's ongoing submission to the arresting officer's authority. By signing the summons, Young acknowledged his continuing submission to the arrest and his promise to appear in court as a condition for being released from arrest." However, an individual does not submit to an officer's police authority merely by taking a summons from the hand of the officer, nor is such a submission evidenced by his signature on a summons. As Code §§ 19.2-73 and 19.2-74 make clear, a summons is a charging document similar to a warrant, information, or indictment which can be issued by a magistrate irrespective of whether any arrest has previously occurred, and as such it merely initiates and serves as notice of the initiation of proceedings in a court of competent jurisdiction but has no bearing on the issue of when or if an arrest has occurred. Further, in this case both the acceptance and the signing of the summons took place after the bood sample was taken, and thus also have no bearing on whether Young was actually arrested prior to the test through a submission to the officer's assertion of authority.

[10] The majority contends that my position is that the legislature did not change the common law principles of arrest despite its enactment of Code §§ 19.2-73 and 19.2-74. However to be precise, my position is simply that the common law principles of arrest are still applicable when determining whether an arrest actually occurred. As the majority observes, a "summons serves as a '*post-arrest document* which facilitates prompt release upon a promise to appear.' Davis v. Commonwealth, 17 Va. App. 666, 671, 440 S.E.2d 426, 430 (1994) (emphasis added)." Thus, as I noted above and consistent with the holding of Bristol, we must look to the common law principles in order to determine if, in fact, an arrest took place.

Supreme Court's decision in <u>Bristol</u> and most recently in <u>Roseborough</u>, as well as this Court's decision in <u>Sprouse</u>, and by an application of the common law principles of arrest and the plain language of the implied consent statute. In the present case, there is no evidence that Trooper Finch ever physically touched Young for the purpose of placing him under arrest, nor that Young did or said anything that would constitute a submission to Trooper Finch's police authority by manifesting a complete surrender of his personal liberty. At the hospital, Trooper Finch informed Young verbally that he was "under arrest" while Young was lying in a hospital bed in the emergency room "hooked up with IVs," at which point Trooper Finch said Young did not try to leave the hospital.[11] Trooper Finch, still standing next to the hospital bed, then advised Young of his <u>Miranda</u> rights and of the implied consent statute. While Trooper Finch read Young the implied consent notice, this recitation does not "expressly reaffirm[] that Young had been 'arrested' by an 'arresting officer'" as the majority contends. If mere words cannot constitute an arrest, then it follows that a recitation of statutory language cannot "expressly affirm" nor constitute an arrest.

After Trooper Finch informed Young of the implied consent statute, Young consented to the withdrawal of his blood samples, and Trooper Finch subsequently took one of the samples. Trooper Finch then issued Young a summons pursuant to Code § 19.2-73, and left the hospital.

---

[11] The majority notes that even though Young was already physically restrained by his connection to IVs, Trooper Finch remained with him after the blood sample was drawn, advised him of the charge pending against him, and obtained his signature on the summons all prior to leaving the hospital thus constituting a constraint of Young's liberty by Trooper Finch. While the majority excuses the requirement of some physical touching by Trooper Finch due to Young's medical condition and the circumstances of his treatment by the medical staff of the hospital, the fact remains that there is no evidence of physical touching by Trooper Finch or evidence that the hospital staff were somehow acting as agents of Trooper Finch when touching Young or determining how to treat his injuries. In the absence of evidence of any agency relationship, the hospital's restraint of Young is irrelevant to any anaylsis of Young's custody status. Further an individual should not be required to remove IVs or other physical restraints put in place by the hospital for the purpose of treatment and physically leave the hospital in order to negate any imputation of physical restraint to an officer standing nearby.

At trial, Trooper Finch testified that he could not recall if he ever put a hand on Young, if Young ever acknowledged the arrest, or if Young was even strapped down to the hospital bed. Thus, at no time did Trooper Finch physically restrain Young at the hospital after he told Young that he was "under arrest" and prior to the blood sample being taken.

Turning to any submission to police authority, aside from the fact that any submission to authority constituting an arrest is statutorily required *prior* to the utilization of the procedures in the implied consent statute, in my view, Young's consent to the blood test could not constitute a submission to Trooper Finch's authority, nor did his actions evince any such submission. See Bristol, 272 Va. at 574, 636 S.E.2d at 464 (concluding that, without more, Bristol's consent to the blood test was not a surrender of his personal liberty but rather simply an agreement to submit to a blood test). Young never made any statement nor did he act in a manner demonstrating that he was completely surrendering his personal liberty to Trooper Finch's control. Young merely acquiesced to the taking of a blood test after he was verbally informed that he was under arrest, read his Miranda rights, and notified about the implied consent statute. When the blood sample was taken, Trooper Finch remained by Young's side, and then left the hospital after receiving one of the samples and issuing a summons. Trooper Finch never restrained Young nor did he take any other actions to constrain Young's personal liberty.

For all of these reasons, I would hold that Young was not under "arrest" prior to the taking of his blood sample, and thus the circuit court abused its discretion when it admitted the certificate of the blood alcohol test. Accordingly, I would reverse Young's conviction and remand for a new trial if the Commonwealth is so advised.