COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Clements
Argued at Richmond, Virginia


MARK THOMAS HULCHER
                                          OPINION BY
v.    Record No. 0367-02-2         JUDGE LARRY G. ELDER
                                       JANUARY 28, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                  L. A. Harris, Jr., Judge

          Judson W. Collier, Jr. (Hooker, Bode,
          Collier, Dickinson and Gardner, on briefs),
          for appellant.

          Leah A. Darron, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Mark Thomas Hulcher (appellant) appeals from his bench

trial conviction for concealment pursuant to Code § 18.2-103.

On appeal, he contends the statute proscribes only the theft of

"wares offered for sale" and does not include items not offered

for sale, such as items used by a merchant to advertise or

display those wares.  We hold the statute is broad enough to

include items belonging to a merchant that are not offered for

sale.  Thus, we affirm appellant's conviction.

                          I.

                      BACKGROUND

     On May 25, 2001, employees of a Henrico County video store

called the police after observing appellant acting suspiciously

while inside the store. An officer responded to the scene and asked appellant whether he "had any property of the store." Appellant admitted he had some "cover boxes" but said he "didn't feel they were of any value." Appellant removed the cover boxes from his jacket and gave them to the officer, who returned them to store personnel.

The evidence established a cover box is a movie or video box used to advertise videos that the video store offers for rent. A cover box comprises either a video box inside a clear plastic case or a shrink-wrapped video box with a piece of styrofoam inside instead of a video tape. The box itself bears the name of the movie and related pictures. It summarizes the movie's plot and lists the cast and any awards the movie may have won. The cover box is placed "on the shelf in front of the actual videos [the store is] trying to rent." A video box, while in use as a cover box, is an advertising aid only. It bears no price tag or bar code, has no price in the store's computer, and is not offered for sale or rent.

Although a cover box is used only for advertising and is not available for rent with the videotape it advertises, the video store always receives as many cover boxes for a movie as it does videotapes of that movie. On some occasions, the store receives the video box in cover box form with styrofoam and shrink wrap. On other occasions, the store receives the videotape inside the video box and has to remove the videotape

and use its own supplies to convert the video box into a cover box.

When a movie has "been on the wall for a while and it no longer rents as well," the store may decide to sell it as a previously viewed product.  Under these circumstances, an employee "put[s] the rental product video[] . . . back in [its] cover box[] and . . . sell[s]" the box and video together.  On other occasions, the video store is required to reunite the video with the box and return both to "the actual studio that sen[t] . . . the movies."  Under some circumstances, the video store might give away a video box "after it ha[s] served its useful purpose."

The investigating officer issued appellant a summons charging him with concealment of merchandise with a value of $5.00.  The officer testified that the boxes bore no price tags and that the figure on the warrant was "[a] replacement cost . . . suggested to him" when he "investigate[d] through another party not in the store."  Appellant elicited this testimony from the investigating officer on cross-examination and did not object to the officer's testimony about replacement cost.

Appellant argued at trial that the cover boxes he concealed did not qualify as goods or merchandise at the time of concealment because they were not offered for sale.  He conceded that they had some value when used as cover boxes and that some cover boxes eventually become "goods or merchandise" when

reunited with a videotape and offered for sale, but he argued that the cover boxes at issue were not goods or merchandise when he concealed them.

The trial court gave counsel an opportunity to submit legal memoranda on the issue.  After receiving those memoranda, the trial court ruled the legislature intended "goods" as used in the concealment statute to encompass "tangible or moveable personal property" other than merchandise.  Thus, it found appellant's behavior constituted concealment under Code § 18.2-103, and it convicted him of the charged offense.

## II.

### ANALYSIS

Appellant was convicted of violating Code § 18.2-103, which provides as follows:

> § 18.2-103. Concealing or taking possession of merchandise; altering price tags; transferring goods from one container to another; counseling, etc., another in performance of such acts.
> Whoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment, or (ii) alters the price tag or other price marking on such goods or merchandise, or transfers the goods from one container to another, or (iii) counsels, assists, aids or abets another in the performance of any of the above acts, when the value of the goods or merchandise involved in the offense is less than $200,

- 4 -

shall be guilty of petit larceny and, when
the value of the <u>goods or merchandise</u>
involved in the offense is $200 or more,
shall be guilty of grand larceny.  The
willful concealment of <u>goods or merchandise</u>
of any store or other mercantile
establishment, while still on the premises
thereof, shall be prima facie evidence of an
intent to convert and defraud the owner
thereof out of the value of the <u>goods or</u>
<u>merchandise</u>.

(Emphases added).

Appellant contends that the language in the statute shows
the legislature's intent to equate "goods" with "merchandise,"
proscribing concealment only of wares offered for sale by a
merchant.  We disagree.

Under accepted principles of statutory construction, "words
and phrases used in a statute should be given their ordinary and
usually accepted meaning unless a different intention is fairly
manifest."  <u>Woolfolk v. Commonwealth</u>, 18 Va. App. 840, 847, 447
S.E.2d 530, 534 (1994).  In addition,

Proper construction seeks to harmonize the
provisions of a statute both internally and
in relation to other statutes. . . .
[L]egislative purpose can best be
"'ascertained from the act itself when read
in light of other statutes relating to the
same subject matter.'"  <u>Moreno v. Moreno</u>, 24
Va. App. 190, 197, 480 S.E.2d 792, 796
(1997) (citation omitted).  The doctrine of
<u>pari</u> <u>materia</u> teaches that "'statutes are not
to be considered as isolated fragments of
law, but as a whole, or as parts of a great,
connected homogenous system, or a simple and
complete statutory arrangement.'"  <u>Id.</u> at
198, 480 S.E.2d at 796 (citation omitted).

<u>DMV v. Wallace</u>, 29 Va. App. 228, 233-34, 511 S.E.2d 423, 425 (1999) (citation omitted).

In order to ascertain the intent of the legislature, we turn first to the dictionary definitions of "goods" and "merchandise."  <u>Black's Law Dictionary</u> defines "[g]oods" as "[t]angible or movable personal property other than money; esp., articles of trade or items of merchandise."  <u>Black's Law Dictionary</u> 701 (7th ed. 1999).  "Merchandise" is defined as "[g]oods that are bought and sold in business; commercial wares."  <u>Id.</u> at 1000.  Thus, although "goods" may be synonymous with "merchandise," the dictionary recognizes a definition of "goods" which is broader than the definition of "merchandise."  Under the broader of these definitions, the term "goods" includes not only merchandise offered for sale but also any other items of tangible personal property belonging to the merchant, including advertising materials, display racks, mirrors and the like.

"Although any ambiguity or reasonable doubt as to the proper construction of a penal statute must be resolved in favor of the accused, a defendant is not entitled to benefit from an '"unreasonably restrictive interpretation of the statute."'"  <u>O'Banion v. Commonwealth</u>, 33 Va. App. 47, 57, 531 S.E.2d 599, 604 (2000) (<u>en</u> <u>banc</u>) (quoting <u>Holloman v. Commonwealth</u>, 221 Va. 196, 198, 269 S.E.2d 356, 357 (1980) (quoting <u>Ansell v. Commonwealth</u>, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979))).

- 6 -

> It would be absurd to conclude that the legislature would say the same thing twice in one statutory provision. . . . The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word and to promote the ability of the enactment to remedy the mischief at which it is directed.

Clark v. Commonwealth, 22 Va. App. 673, 683, 472 S.E.2d 663, 667-68 (1996), aff'd on reh'g en banc, 24 Va. App. 253, 481 S.E.2d 495 (1997). These principles support the conclusion that the legislature intended to use the broader definition of goods so as to encompass more than just merchandise.

In addition, in Code § 18.2-103, the legislature employed the disputed terms in the disjunctive, as "goods or merchandise," which reinforces the conclusion that the legislature intended the terms would not be synonymous. Code § 18.2-103 (emphasis added). Further, the legislature could reasonably have feared that, if it had used only the term "goods," the statute would be misconstrued to apply only to the narrower definition of "goods," i.e., "articles of trade or items of merchandise." Black's, supra, at 701. Finally, although appellant points out that the statute proscribes concealment "with the intention of converting goods or merchandise . . . without having paid the full purchase price thereof," it also proscribes concealment "with the intention

- 7 -

. . . of defrauding the owner of the value of the goods or merchandise," which makes clear that the item concealed need not have a purchase price as long as it has some value.  Code § 18.2-103 (emphases added).

The legislature's use of only the word "goods" in proscribing "transfers [of] goods from one container to another" does not require a different result.[1]  The statute also covers the transfer of "merchandise" from one container to another because, under the above definitions, items which are merchandise also are goods.

_____

[1] Despite appellant's claims to the contrary, how the terms "goods" and "merchandise" are used in the title of the statute or various judicial opinions is of little importance to our resolution of this issue for two reasons.  First, with limited exceptions not applicable here, the body of a statute rather than its title determines its application.  See Cavalier Vending Corp. v. State Bd. of Pharmacy, 195 Va. 626, 629-30, 79 S.E.2d 636, 638-39 (1954) (holding Virginia's constitutional provision that "'[n]o law shall embrace more than one object which shall be expressed in its title'" is intended to "prevent the members of the legislature and the people from being misled" as to the character of the legislation but does not "require that the caption of an act state its full purpose as completely as the act itself"); see also Code § 1-13.9 ("The headlines of the several sections of this Code printed in black-face type are intended as mere catchwords to indicate the contents of the sections and shall not be deemed or taken to be titles of such sections, nor as any part thereof, nor, unless expressly so provided, shall they be so deemed when any of such sections, including the headlines, are amended or reenacted.") (made applicable to "the construction of this Code and of all statutes" by Code § 1-13); Thurston Metals & Supply Co. v. Taylor, 230 Va. 475, 484, 339 S.E.2d 538, 543-44 (1986) (recognizing that headline of statute in black-face type is "codifier's headline" as opposed to "legislative title").  Second, as appellant concedes, none of the judicial decisions he cites directly addressed the meaning of the phrase, "goods or merchandise," as used in Code § 18.2-103.

Appellant argues the concealment statute was intended to combat shoplifting and cites the definition of "shoplift" contained in Code § 8.01-44.4(F), which governs civil actions brought by merchants to recover losses from shoplifting and employee theft.[2]  Appellant argues this definition supports his position that "goods" and "merchandise" are synonymous under the concealment statute.  We reach the opposite conclusion.  Code § 8.01-44.4(F) refers only to the theft of "merchandise"; it does not mention the theft of "goods."  Thus, the doctrine of

_____

[2] Code § 8.01-44.4 provides in relevant part as follows:

F.  For purposes of this section:

\*    \*    \*    \*    \*    \*    \*

"Shoplift" means any one or more of the following acts committed by a person without the consent of the merchant and with the purpose or intent of appropriating merchandise to that person's own use without payment, obtaining merchandise at less than its stated sales price, or otherwise depriving a merchant of all or any part of the value or use of merchandise: (i) removing any merchandise from the premises of the merchant's establishment; (ii) concealing any merchandise; (iii) substituting, altering, removing, or disfiguring any label or price tag; (iv) transferring any merchandise from a container in which that merchandise is displayed or packaged to any other container; (v) disarming any alarm tag attached to any merchandise; or (vi) obtaining or attempting to obtain possession of any merchandise by charging that merchandise to another person without the authority of that person or by charging that merchandise to a fictitious person.

- 9 -

pari materia supports the conclusion that the legislature meant to prescribe more than the theft of merchandise under Code § 18.2-103. If it had intended to proscribe only the theft of merchandise, it would have used only the term "merchandise" as it did in Code § 8.01-44.4(F).

Appellant's contention that such an interpretation turns Code § 18.2-103 into a general larceny statute misses the point. Code § 18.2-103 is a larceny statute and provides that the behavior prescribed therein constitutes grand larceny or petit larceny depending on the value of the item or items involved in the offense. The statute's express language indicates the legislature's intent merely to make larcenous intent easier to prove in cases involving the theft of articles from merchants, who necessarily allow the general public largely unrestricted access to both the merchandise they offer for sale and to other goods also on their premises.[3] This interpretation of Code

_____

[3] We decline appellant's invitation to consider newspaper and journal articles written contemporaneously with the passage of the concealment statute as an appropriate source of "legislative history." See, e.g., Mitchell v. Rayl, 665 P.2d 1117, 1119 (Kan. Ct. App. 1983) (rejecting newspaper article as conclusive proof of legislative intent); 2A Norman J. Singer, Sutherland's Statutes & Statutory Construction § 48.11, at 461 (6th ed., 2000 rev.). Furthermore, even if we were to consider the content of those articles, they do not compel the conclusion appellant advances. Those articles indicate that, under the law in effect at that time, a merchant had no legal recourse against a shopper who concealed an item belonging to the store in his clothing or other possessions until the shopper took the stolen item off the premises. The stated intent of the concealment statute was "to protect a storekeeper against crooks." Thus, the intent of the concealment statute--to permit apprehension

§ 18.2-103 effects the intent of the legislature and does no harm to the larger legislative scheme of which it is a part.

For these reasons, we conclude the legislature, in enacting Code § 18.2-103, intended to proscribe the concealment of both merchandise offered for sale and other types of goods not offered for sale. Thus, we affirm appellant's conviction.

<u>Affirmed</u>.

---

and prosecution of individuals who conceal the property of a store without leaving the premises--could be applied just as appropriately to items offered for sale to the public as to other items of tangible personal property which were not offered for sale at the time of their theft.