740 S.E.2d 26

**KEPA, INC., d/b/a She–Sha Café and Hookah Lounge**

v.

**VIRGINIA DEPARTMENT OF HEALTH.**

**Record No. 1164–12–3.**

Court of Appeals of Virginia,
Salem.

April 9, 2013.

Petty, J., filed dissenting opinion.

Andrew P. Connors (James R. Creekmore; Daleville, Keith Finch; Blacksburg, The Creekmore Law Firm, PC, on briefs), for appellant.

Karri B. Atwood, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Present: PETTY and CHAFIN, JJ., and BUMGARDNER, Senior Judge.

CHAFIN, Judge.

Appellant Kepa, Inc. challenges the ruling by the Circuit Court of Montgomery County upholding the Virginia Depart-

ment of Health's determination that She–Sha Café and Hoo-kah Lounge is not exempt from compliance with the regula-tions of the Virginia Indoor Clean Air Act. For the reasons that follow, we affirm the circuit court's ruling.

## BACKGROUND

Appellant owns and operates She–Sha Café and Hookah Lounge ("She–Sha") in Blacksburg, Virginia. She–Sha has been in operation since 2003 and sells flavored tobacco prod-ucts for its customers to use on the premises by smoking the tobacco through a hookah.[1] Customers may purchase the tobacco for off-premises use as well. In addition to the hookah-related transactions, She–Sha offers customers a menu of food and beverage items. The Town of Blacksburg issued She–Sha a business license based on a December 2, 2009 application listing the business as a "restaurant and retail tobacco store." She–Sha holds a valid permit from the Virgi-nia Department of Health ("the Department") as a full service restaurant. She–Sha is also licensed by the Commonwealth of Virginia Department of Taxation as an "Other Tobacco Prod-ucts Retailer."

On January 22, 2010, the Department received a complaint claiming that She–Sha was allowing patrons to smoke within its establishment in violation of the Virginia Indoor Clean Air Act ("VICAA"). On January 27, 2010, in a Food Establish-ment Evaluation Report ("the report"), She–Sha was cited by the Department for two noncritical violations of the VICAA: an individual was smoking in the building and the facility failed to post "no smoking" signs.[2]

To contest the violations, appellant requested an informal fact finding hearing, which was held on March 22, 2010. By

---

1. A hookah is a "pipe for smoking that has a long flexible tube whereby the smoke is cooled by passing through water." *Webster's Third New International Dictionary* 1088 (2002).

2. Code § 15.2–2825(D) requires that restaurants subject to the smoking ban post "signs stating 'No Smoking' or containing the international 'No Smoking' symbol . . . clearly and conspicuously."

letter dated July 8, 2010, the Department upheld its determination that She–Sha was "properly labeled as a restaurant and that ... none of [the exceptions to VICAA] apply to She–Sha." The letter noted that a restaurant under VICAA is "any place where food is served," and the term "shall include any bar or lounge area that is part of such restaurant." It also noted that the smoking ban applies to hookah use, as it involves "the carrying or holding of any lighted pipe ... or any other lighted smoking equipment, or the lighting, inhaling, or exhaling of smoke [from] a pipe...." In conclusion, the Department found that She–Sha was a restaurant because it served food, and even if the hookah lounge was considered a bar or lounge area, the VICAA expressly subjected such areas to its terms.

Appellant then requested a formal adjudicatory hearing. Appellant also renewed its request for a summary case decision by the Department pursuant to Code § 2.2–4020.1.[3] In its request, appellant stipulated that She–Sha was a restaurant as defined in the VICAA. By letter dated October 12, 2010, the State Health Commissioner informed appellant that a summary case decision was inappropriate at that time, but the Department would consolidate the summary case decision proceeding with the formal hearing appellant had requested.

The formal hearing was conducted on March 15, 2011. On May 19, 2011, the hearing officer recommended nine findings of fact and conclusions of law. The Department issued its case decision on June 17, 2011, in which the Health Commissioner adopted the hearing officer's recommendations. The case decision upheld the violations noted in the report and stated that She–Sha is a restaurant subject to the regulations of the VICAA.

Appellant petitioned the Circuit Court of Montgomery County on August 12, 2011 for an appeal of the Department's final decision in accordance with Code §§ 2.2–4026 and 2.2–

---

3. This "renewed request" is the only request contained in the agency record; the initial request was not included.

4027. Upon consideration of the pleadings and argument of the parties, the circuit court found that the Department made no error of law and dismissed the appeal with prejudice. The court opined that it believed She–Sha should be exempt from the VICAA, but that the statute as written does not allow for its exemption. Appellant now challenges the circuit court's ruling.

## I. ANALYSIS

The issue on appeal is whether She–Sha is exempt from complying with the restaurant smoking ban contained in the VICAA. Appellant argues that the circuit court erred in upholding the Department's case decision because She–Sha is a retail tobacco store and the applicability provisions of the VICAA exempt retail tobacco stores from regulation by the other provisions within the Act. The Department maintains that even if She–Sha is a retail tobacco store, it is also a restaurant and the VICAA prohibits smoking in restaurants. The Department also contends that the VICAA provides express exemptions to the restaurant smoking ban, none of which apply to She–Sha.

 The Virginia Administrative Process Act ("VAPA") authorizes judicial review of agency decisions. *See* Code § 2.2–4027. Under settled principles, the burden is upon the party appealing such a decision to demonstrate error. *Avante at Roanoke v. Finnerty*, 56 Va.App. 190, 197, 692 S.E.2d 277, 280 (2010); *Carter v. Gordon*, 28 Va.App. 133, 141, 502 S.E.2d 697, 700–01 (1998). "Our review is limited to determining (1) '[w]hether the agency acted in accordance with law;' (2) '[w]hether the agency made a procedural error which was not harmless error;' and (3) '[w]hether the agency had sufficient evidential support for its findings of fact.'" *Avante at Roanoke*, 56 Va.App. at 197, 692 S.E.2d at 280 (quoting *Johnston–Willis, Ltd. v. Kenley*, 6 Va.App. 231, 242, 369 S.E.2d 1, 7 (1988)).

 The reviewing court must determine " 'whether substantial evidence exists in the agency record to support the

agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.' " *John Doe v. Virginia Bd. of Dentistry,* 52 Va. App. 166, 175, 662 S.E.2d 99, 103 (2008) (quoting *Johnston–Willis, Ltd.,* 6 Va.App. at 242, 369 S.E.2d at 7). *See Virginia Real Estate Comm'n v. Bias,* 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) ("The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938))).

 On appeal from an agency's determination of law, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . 'judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of delegated discretion.' "

*Evelyn v. Commonwealth,* 46 Va.App. 618, 624, 621 S.E.2d 130, 133 (2005) (alteration in original) (quoting *Johnston–Willis,* 6 Va.App. at 244, 369 S.E.2d at 8). Generally, however, "[a]n agency's legal interpretations of statutes is accorded no deference because we have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies." *Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc.,* 56 Va.App. 469, 481, 694 S.E.2d 290, 296 (2010) (citations and internal quotation marks omitted); *see Virginia Dep't of Health v. NRV Real Estate, LLC,* 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009) ("Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review."

(citation omitted)). Accordingly, we conduct a *de novo* review of the agency's interpretation of the statutes in dispute. *Id.*

### The Virginia Indoor Clean Air Act

"Statutory interpretation is a question of law which we review *de novo,* and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth,* 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009). The Virginia Supreme Court has long held that "when analyzing a statute, we must assume that 'the legislature chose, with care, the words it used ... and we are bound by those words as we interpret the statute.' " *City of Virginia Beach v. ESG Enters.,* 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting *Barr v. Town and Country Properties,* 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). " 'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.' " *Tazewell County Sch. Bd. v. Brown,* 267 Va. 150, 162, 591 S.E.2d 671, 676–77 (2004) (citation omitted).

Further, "when a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." *Ainslie v. Inman,* 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003) (citing *Kole v. City of Chesapeake,* 247 Va. 51, 56, 439 S.E.2d 405, 408 (1994)). "Proper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes." *Hulcher v. Commonwealth,* 39 Va.App. 601, 605, 575 S.E.2d 579, 581 (2003). Indeed, "statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement." *Id.* at 606, 575 S.E.2d at 581 (quoting *Moreno v. Moreno,* 24 Va.App. 190, 198, 480 S.E.2d 792, 796 (1997)) (internal quotation marks omitted).

■ The VICAA as currently enacted became effective on December 1, 2009. The main provision at issue in this case

involves the restaurant smoking ban contained in Code § 15.2–2825. Code § 15.2–2825(A) states that "smoking shall be prohibited and no person shall smoke in any restaurant in the Commonwealth. . . ." The inspection and regulation of restaurants is within the general purview of the Department, and pursuant to Code § 15.2–2825(I), "[a]ny local health department shall, while inspecting a restaurant as otherwise required by law, inspect for compliance with [Code § 15.2–2825]." "Restaurant" is defined by Code § 15.2–2820 as "any place where food is prepared for service to the public on or off the premises, or any place where food is served. . . . 'Restaurant' shall include any bar or lounge area that is part of such restaurant." [4] It was both acknowledged by appellant and determined by the Department that She–Sha is a place where food is served; therefore, She–Sha plainly fits the statute's definition of "restaurant."

As a restaurant, She–Sha must comply with the restaurant smoking ban, unless it falls within one of the six expressly stated exemptions to this section of the VICAA set forth in Code § 15.2–2825(A)(1)–(6):

1. Any place or operation that prepares or stores food for distribution to persons of the same business operation or of a related business operation for service to the public. Examples of such places or operations include the preparation or storage of food for catering services, pushcart operations, hotdog stands, and other mobile points of service;

2. Any outdoor area of a restaurant, with or without roof covering, at such times when such outdoor area is not enclosed in whole or in part by any screened walls, roll-up doors, windows or other seasonal or temporary enclosures;

---

4. "Bar or lounge area" is defined in the same code section to mean "any establishment or portion of an establishment devoted to the sale and service of alcoholic beverages for consumption on the premises where the sale or service of food or meals is incidental to the consumption of the alcoholic beverages." Code § 15.2–2820. Even though She–Sha is named "She–Sha Café and Hookah Lounge," it does not fit within the Code's definition of "lounge" because it is not devoted to the sale and service of alcoholic beverages.

3. Any restaurants located on the premises of any *manufacturer of tobacco products;*

4. Any portion of a restaurant that is used exclusively for private functions, provided such functions are limited to those portions of the restaurant that meet the requirements of subdivision 5;

5. Any portion of a restaurant that is constructed in such a manner that the area where smoking may be permitted is (i) structurally separated from the portion of the restaurant in which smoking is prohibited and to which ingress and egress is through a door and (ii) separately vented to prevent the recirculation of air from such area to the area of the restaurant where smoking is prohibited. At least one public entrance to the restaurant shall be into an area of the restaurant where smoking is prohibited. For the purposes of the preceding sentence, nothing shall be construed to require the creation of an additional public entrance in cases where the only public entrance to a restaurant in existence as of December 1, 2009, is through an outdoor area described in subdivision 2; and

6. Any private club.

(Emphasis added).

 Appellee argues for application of the maxim *expressio unius est exclusio alterius,* meaning "the expression of one thing is the exclusion of another." This maxim is a fundamental principle of statutory construction which gives rise to the implication that " 'omitted terms were not intended to be included within the scope of the statute.' " *See, e.g. Conkling v. Commonwealth,* 45 Va.App. 518, 522, 612 S.E.2d 235, 237 (2005) (quoting *Commonwealth v. Brown,* 259 Va. 697, 704–05, 529 S.E.2d 96, 100 (2000)). Applying this principle to the statute at hand, the legislature included certain express exemptions to the restaurant smoking ban, implying that any restaurant that fails to meet the criteria for at least one of the stated exemptions is not exempt from compliance with the smoking ban.

She–Sha does not fit within any of the six stated exemptions. She–Sha does not prepare or store food for distribution as a catering service or other mobile point of service. It does not operate an outdoor, non-enclosed area of its restaurant. She–Sha is not a private club, nor is it used exclusively for private functions. There is no portion of She–Sha that is structurally separate and separately vented from smoking areas. And most pertinently, She–Sha is not a restaurant located on the premises of a manufacturer of tobacco products. Tobacco manufacturing facilities are referenced elsewhere in the VICAA in conjunction with retail tobacco stores and tobacco warehouses. Retail tobacco stores and tobacco warehouses, however, are missing from the exemption language in Code § 15.2–2825(A)(3). The legislature's express inclusion of tobacco manufacturers and exclusion of retail tobacco stores and tobacco warehouses is evidence of the intent that the latter be subject to compliance with the restaurant smoking ban.

Appellant argues that Code § 15.2–2821, governing applicability of the VICAA, takes precedence over the restaurant smoking ban contained in the subsequent provisions of the chapter and exempts She–Sha from compliance. Code § 15.2–2821 provides: "Nothing in this chapter shall be construed to: 1. Permit smoking where it is otherwise prohibited or restricted by other applicable provisions of law; *or* 2. Regulate smoking in retail tobacco stores, tobacco warehouses, or tobacco manufacturing facilities."[5] (Emphasis added). Appellant asserts that She–Sha is a retail tobacco store and heavily emphasizes the language "[n]othing in this chapter shall be construed to regulate smoking in retail tobacco stores." Appellant claims the Department ignored this controlling language in determining that She–Sha is not exempt from the VICAA.

---

5. The statute does not define "retail tobacco store," and no finding of fact was made as to whether She–Sha is a retail tobacco store as contemplated by the statute. Such a finding is unnecessary, however, in light of the trial court's finding that She–Sha is a restaurant, and thus subject to the VICAA.

Appellant's interpretation of Code § 15.2–2821 is inconsistent with Code § 15.2–2825. Since interpretation of multiple, related statutory provisions must give full effect to each provision while remaining true to the purpose and intent behind them, Code §§ 15.2–2821 and 15.2–2825 must be construed together. As discussed above, smoking is "otherwise prohibited" in non-exempt restaurants by Code § 15.2–2825. If Code § 15.2–2821 was intended by the legislature to provide a blanket exemption for tobacco warehouses, tobacco manufacturing facilities, and retail tobacco stores not operated exclusively as such, then there would have been no need for the legislature to expressly exempt restaurants on the premises of tobacco manufacturers later in Code § 15.2–2825(A)(3). Since these facilities would already be covered by Code § 15.2–2821, such an interpretation effectively renders the exemption in Code § 15.2–2825 meaningless. Further, Code § 15.2–2825 regulates smoking in restaurants, not retail tobacco stores. Thus, it does not conflict with Code § 15.2–2821.

For these reasons, we reject appellant's arguments. Even though appellant recognizes that She–Sha can simultaneously be both a retail tobacco store and a restaurant, it seeks to be treated as one to the exclusion of the other, and thereby circumvent the statutory obligations associated with being a restaurant. The statutory provisions read in conjunction with each other show that the legislature did not intend an all-encompassing exemption for retail tobacco stores not operating exclusively as such. Even if it were to be determined that She–Sha is a retail tobacco store as contemplated by the VICAA, She–Sha is also a restaurant as defined by the statute, and She–Sha does not fall within any of the stated exemptions to the restaurant smoking ban. Without an applicable exemption, She–Sha must comply with the VICAA restaurant smoking ban, including posting the appropriate signs and prohibiting patrons from smoking.

### Attorney's Fees

Appellant requests it be granted attorneys' fees and costs associated with the proceeding pursuant to Code § 2.2–4030. This section provides as follows:

In any civil case brought under Article 5 (§ 2.2–4025 et seq.) of this chapter ... in which any person contests any agency action, such person shall be entitled to recover from that agency ... reasonable costs and attorneys' fees if such person substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust.

Code § 2.2–4030(A). Where a party does not substantially prevail on the merits of the case and the agency's position is substantially justified, attorneys' fees and costs will not be awarded.

For the reasons stated above, appellant did not substantially prevail on the merits of the case and the Department's position was substantially justified. Appellant's argument for exemption from the VICAA was rejected, and the Department's case decision was upheld as a reasonable interpretation of the statutory provisions. In light of this outcome, it is inappropriate to award appellant attorneys' fees and costs.

### III. CONCLUSION

Because She–Sha is a restaurant as contemplated by the VICAA, it is subject to the restaurant smoking ban and must comply with its requirements. She–Sha does not fall within any of the stated exemptions to the restaurant smoking ban, and the VICAA does not provide an all-encompassing exemption for retail tobacco stores that simultaneously operate as a restaurant subject to the VICAA smoking ban. Interpreting the VICAA as such would render other provisions of the statute superfluous. For these reasons, the circuit court did not err in upholding the Department's decision that She–Sha was not exempt from compliance with the VICAA.

*Affirmed.*

PETTY, J., dissenting.

In analyzing statutes, we employ principles of statutory construction to construe those statutes in a way that comports with the intent of the legislature. Indeed, the majority uses

several such principles in order to construe Code § 15.2–2825 in a way that would prohibit smoking in the She–Sha Café and Hookah Lounge, a business that unquestionably is engaged in the retail sale of tobacco products.[6] In doing so, however, the majority ignores the express intent of the General Assembly prohibiting such construction. The plain and unambiguous language of Code § 15.2–2821 explicitly states that "*[n]othing* in this chapter shall be *construed* to . . . [r]egulate smoking in *retail tobacco stores*, tobacco warehouses, or tobacco manufacturing facilities." (Emphasis added). Accordingly, by doing exactly what Code § 15.2–2821 expressly prohibits, the majority glosses over the plain language of the statute and applies the Indoor Clean Air Act to a business the General Assembly clearly intended to exclude. Therefore, I dissent.

The General Assembly passed the Indoor Clean Air Act in 1990 as Chapter 28 of Title 15.2 of the Virginia Code. The Act banned smoking in various government buildings and in some public areas. It also required certain restaurants to provide separate smoking and non-smoking areas. *See* Code §§ 15.2–2800 to –2810. In 2009, the General Assembly repealed Chapter 28 and replaced it with Chapter 28.2. The new Indoor Clean Air Act banned smoking in all restaurants and bars in the Commonwealth. *See* Code § 15.2–2825.[7] However,

---

**6.** The business model for She–Sha involves charging patrons for a flavored, wet tobacco which is heated by a burning coal and then smoked through a water-filled pipe known as a hookah. She–Sha sells tobacco and tobacco-related products as well as food and alcohol to its customers. However, it derives the majority of its revenue from the sale of tobacco. Tobacco and tobacco-related sales, e.g., hookah rentals, accounted for sixty-six to sixty-seven percent of She–Sha's revenue in the three months preceding the citations from the Department of Health. These sales figures have been consistent since September 2008. She–Sha has a license from the Virginia Department of Taxation classifying it as an "Other Tobacco Products Retailer." As of February 2010, She–Sha has paid over $7,200 in taxes, as required for retail tobacco sales. While food and alcohol are also sold, the revenue from these sales is less than one-third of the total revenue.

**7.** Code § 15.2–2825(A) provides various exemptions to the restaurant smoking ban. The only Code § 15.2–2825(A) exemption at issue in this

the General Assembly carried over an express provision from the repealed Act that exempted retail tobacco stores from any of the Act's provisions that regulated smoking. Code § 15.2–2821. Thus, it would seem to me that before we engage in an analysis of whether She–Sha is a restaurant as defined in Code § 15.2–2820, or whether the Department of Health may enforce the provisions of the Act pertaining to restaurants, we first must determine if the business is a retail tobacco store. If it is, no amount of statutory-construction gymnastics can overcome the definite and precise language of Code § 15.2–2821—"[n]othing in this chapter shall be construed to regulate smoking in retail tobacco stores. . . ." In other words, if She–Sha is a retail tobacco store, we do not need to concern ourselves with any of the provisions of the Indoor Clean Air Act, including its definition of a restaurant, because they simply do not apply.

Nevertheless, the majority concludes that because She–Sha meets the definition of a restaurant, as defined in Code § 15.2–2820, the Indoor Clean Air Act applies to it regardless of whether it is primarily a retail tobacco store. This conclusion is based upon the assumption that the General Assembly did not intend to exempt from Code § 15.2–2825 those businesses mentioned in Code § 15.2–2821, if that business also operates as a restaurant. Specifically, the majority reasons that smoking is prohibited in any establishment that prepares or serves food to the public unless the establishment is specifically exempted by Code § 15.2–2825(A). In advancing its construction of the Act, the majority points to the specific exemption in Code § 15.2–2825(A) for "any restaurants located on the premises of any manufacturer of tobacco products." The majority states that because a tobacco manufacturing facility is also specifically exempted in Code § 15.2–2821, the General Assembly intended for Code § 15.2–2825 to apply to any business listed in Code § 15.2–2821 unless there is a specific exemption in Code § 15.2–2825(A). The majority

---

case is an exemption for "restaurants located on the premises of any manufacturer of tobacco products." Code § 15.2–2825(A)(5).

applies the statutory construction principle of *expressio unius est exclusio alterius* to reach the conclusion that "[t]he legislature's express inclusion of tobacco manufacturers and exclusion of retail tobacco stores and tobacco warehouses is evidence of the intent that the latter be subject to compliance with the restaurant smoking ban."

This conclusion stands in stark contrast to the plain language of the relevant statutory provisions. Code § 15.2–2821 exempts "tobacco manufacturing facilities" from the application of the Indoor Clean Air Act. Code § 15.2–2825(A) exempts restaurants "located on the premises of any manufacturer of tobacco products" from the application of the Indoor Clean Air Act. "Tobacco manufacturing facilities" and "premises of any manufacturer of tobacco products," as used in the Indoor Clean Air Act, are not synonymous; they describe completely different things.[8] We know this to be true because

"[w]e look to the plain meaning of the statutory language, and presume that the legislature chose, with care, the words it used when it enacted the relevant statute." Moreover, when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional.

*Zinone v. Lee's Crossing Homeowner's Ass'n*, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011) (quoting *Addison v. Jurgelsky*, 281 Va. 205, 208, 704 S.E.2d 402, 404 (2011)).

While the Indoor Clean Air Act does not provide a definition for "tobacco manufacturing facilities," as used in Code § 15.2–2821, Code § 15.2–2820 does provide a definition for "facility," as used in connection with other terms in the Indoor Clean Air

---

8. I note that the premises of Philip Morris USA, a tobacco manufacturer in the Richmond area, is "[l]ocated on a 200–acre site." However, the actual tobacco manufacturing facilities on this premises consist of "six connected buildings that cover a total of 43 acres." *Offices & Facilities*, Philip Morris USA, http://www.philipmorrisusa.com/en/cms/Company/Corporate_Structure/ Offices_Facilities/default.aspx?src= top_nav (last visited February 19, 2013).

Act: " 'Educational facility' means any building used for instruction of enrolled students"; " 'Health care facility' means any institution, place, building, or agency...."; " 'Recreational facility' means any enclosed, indoor area used by the general public and used as a stadium, arena, skating rink, video game facility, or senior citizen facility." Looking at the various definitions of "facility" in the Indoor Clean Air Act, the common theme running throughout each one is that "facility" includes some type of building or structure which facilitates the desired function. Indeed, the plain and ordinary meaning of facility is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." *Webster's Third New International Dictionary* 812 (1981). Thus, the plain meaning of "tobacco manufacturing facility" is some type of building or structure which facilitates the manufacture of tobacco.[9]

The Indoor Clean Air Act does not provide a definition for "premises of any manufacturer of tobacco products." However, the key term in this phrase, for our purposes, is "premises." The plain and ordinary meaning of premises is "a specified piece or tract of land with the structures on it," or "the place of business of an enterprise or institution." *Webster's, supra,* at 1789. Thus, "premises of any manufacturer of

---

**9.** This definition accords with the definition of "manufacturing facility" used in Code § 15.2–5000. Although, Code § 15.2–5000 is not applicable here, and it specifically states that the definition is to be used for bonding purposes only, it is nonetheless instructive in our quest for an acceptable definition of tobacco manufacturing facilities. Code § 15.2–5000 states,

"Manufacturing facility" means (i) any facility which is used in the manufacturing or production of tangible personal property, including the processing resulting in a change of condition of such property, (ii) any facility which is used in the creation or production of intangible property as described in § 197(d)(1)(C)(iii) of the Internal Revenue Code of 1986, as amended, to be any patent, copyright, formula, process, design, pattern, knowhow, format, or other similar item, or (iii) any facility which is functionally related and subordinate to a manufacturing facility if such facility is located on the same site as the manufacturing facility.

tobacco products" would include any land with structures on it that a tobacco manufacturer uses as its place of business.

Accordingly, "premises," as used in Code § 15.2–2825(A), has a different meaning than "facilities," as used in Code § 15.2–2821. Code § 15.2–2821 exempts tobacco manufacturing *facilities* from the Indoor Clean Air Act. This means that any buildings or structures which facilitate the manufacture of tobacco are exempt from the Indoor Clean Air Act under Code § 15.2–2821. This exemption would apply to restaurants located within a tobacco manufacturing facility; it would not apply to restaurants located on the premises of a tobacco manufacturer. This is where Code § 15.2–2825(A) presumably fills the gap left by Code § 15.2–2821. Code § 15.2–2825(A) exempts "restaurants located on the premises of any manufacturer of tobacco products." This means that a restaurant located on land with structures on it that the tobacco manufacturer uses as its place of business is exempt from the Indoor Clean Air Act under Code § 15.2–2825(A). Accordingly, a tobacco manufacturer could have a restaurant in its manufacturing *facility,* and that restaurant would be exempt from the Indoor Clean Air Act under Code § 15.2–2821. On the other hand, a tobacco manufacturer could have a stand-alone restaurant located on its *premises,* and that restaurant would be exempt from the Indoor Clean Air Act under Code § 15.2–2825(A).

The language of Code § 15.2–2821 is clear. If a business is a retail tobacco store, tobacco warehouse, or tobacco manufacturing facility, then it is exempt from all provisions of the Indoor Clean Air Act. *Nothing* in the Indoor Clean Air Act can be construed to regulate smoking in the business.

The Department of Health argues that a restaurant could avoid the requirements of the Indoor Clean Air Act by selling packets of cigarettes and labeling itself as a retail tobacco store. Indeed, a restaurant's ability to masquerade as a retail tobacco store would undermine the General Assembly's purpose in implementing the Indoor Clean Air Act. I am not unmindful of the Department's public policy concerns. Accordingly, I would adopt a primary purpose test to determine

whether a business is a retail tobacco store, and therefore, exempt from the provisions of the Indoor Clean Air Act under Code § 15.2–2821. In order for a business to fall under the Code § 15.2–2821 exemption for a retail tobacco store, the primary purpose of the business must be the sale of tobacco. I do not propose a bright-line, formulaic approach to the classification of a business. Instead, the primary purpose of a business can be determined by looking at the totality of the evidence, including whether the business derives the majority of its revenue from the sale of tobacco. Both the Department and the trial court refused to determine whether She–Sha was a tobacco retail store. Because of this refusal, I would remand this case to the trial court with instructions to remand to the Department of Health for it to make a determination whether She–Sha is a retail tobacco store and thus exempt from the operation of the Indoor Clean Air Act.