751 S.E.2d 671

**KEPA, INC., d/b/a She–Sha Café and Hookah Lounge**

v.

**VIRGINIA DEPARTMENT OF HEALTH.**

**Record No. 1164–12–3.**

Court of Appeals of Virginia,
Richmond.

Dec. 17, 2013.

Chafin, J., filed dissenting opinion in which Frank and McCullough, JJ., joined.

Andrew P. Connors (James R. Creekmore, Daleville; Keith Finch, Blacksburg; The Creekmore Law Firm PC, on briefs), for appellant.

Paul Kugelman, Jr., Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Present: Chief Judge FELTON, Judges FRANK, HUMPHREYS, KELSEY, PETTY, ALSTON, McCULLOUGH, HUFF and CHAFIN.

## UPON A REHEARING EN BANC.

PETTY, Judge.

Kepa, Inc., doing business as She–Sha Café and Hookah Lounge ("She–Sha"), appeals from an order of the trial court upholding the decision of the Virginia Department of Health ("Department") that She–Sha is not exempt from the regulations [1] of the Virginia Indoor Clean Air Act ("VICAA"). A divided panel of this Court held that She–Sha was not exempt from the regulations of the VICAA and accordingly affirmed the trial court's decision. *Kepa, Inc. v. Va. Dep't of Health*, 61 Va.App. 696, 740 S.E.2d 26 (2013). We subsequently granted She–Sha's petition for rehearing en banc and stayed the panel decision. [2] On rehearing en banc, we hold that She–Sha is exempt from the regulations of the VICAA because it is a retail tobacco store.

### I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Department of Health, the party prevailing

---

**1.** The Department cited She–Sha for violating Code § 15.2–2825(D) (requiring no-smoking signs) and Code § 15.2–2825(F) (prohibiting smoking).

**2.** By granting the petition for rehearing en banc, we vacated the previous panel decision. *See Logan v. Commonwealth*, 47 Va.App. 168, 170, 622 S.E.2d 771, 772 (2005) (en banc).

below. *See Hilliards v. Jackson,* 28 Va.App. 475, 479, 506 S.E.2d 547, 549 (1998).

She–Sha is a retail tobacco store and restaurant located in Blacksburg, Virginia. The business model for She–Sha involves charging patrons for a flavored, wet tobacco which is heated by a burning coal and then smoked through a water-filled pipe known as a hookah.[3]

She–Sha does not allow its customers to consume any outside tobacco on its premises. Instead, customers pay a fee to rent a hookah filled with hookah tobacco. She–Sha also sells packaged tobacco for customer use off-premises. To go along with hookah and tobacco sales, She–Sha offers customers a menu of food and beverage items.

She–Sha has been in business since 2003, and has nearly half a million dollars in annual revenue. Tobacco and tobacco-related sales, e.g., hookah rentals, accounted for sixty-six percent to sixty-seven percent of She–Sha's revenue in the three months preceding the citations from the Department— December 2009 to February 2010. These sales figures have been consistent since September 2008.[4]

She–Sha is licensed by the Department of Taxation as an "Other Tobacco Product Retailer." As of February 2010, She–Sha had paid a total of $7,208.72 in other tobacco products taxes to the Commonwealth. She–Sha has a "Restaurant and Retail Tobacco Store" business license that was issued by

---

**3.** A hookah is a "pipe for smoking that has a long flexible tube whereby the smoke is cooled by passing through water." *Webster's Third New International Dictionary* 1088 (2002).

**4.** Prior to December 2009, She–Sha included tobacco-to-go purchases in its merchandise sales figures. Thus, She–Sha's financial records showed a lower percentage of tobacco and tobacco-related sales before that date. According to the sales figures and uncontested testimony from She–Sha, if the tobacco-to-go purchases would have been calculated separately—as they were from December 2009 to February 2010— then the percentage of tobacco and tobacco-related sales since at least September 2008 would have been consistent with the December 2009 to February 2010 sales percentages. The Department stipulated to the accuracy of the sales figures.

the Town of Blacksburg. She–Sha is also "a place where food is served," defined in Code § 15.2–2820 as a "restaurant." Accordingly, She–Sha has a permit/license from the Department to operate as a restaurant.

On January 27, 2010, the Department investigated a complaint that She–Sha was allowing customers to smoke in its place of business. In a Food Establishment Evaluation Report, the Department cited She–Sha for two non-critical violations of the VICAA: (1) failure to post no-smoking signs as required by Code § 15.2–2825(D), and (2) failure to prohibit smoking in non-smoking areas as required by Code § 15.2–2825(F).

She–Sha requested an informal fact-finding hearing to dispute the citations. On March 22, 2010, Dr. J. Henry Hershey, the Director of the New River Health District for the Montgomery County Health Department, conducted the informal fact-finding hearing. On July 8, 2010, Dr. Hershey issued a letter opining that the citations were proper.

She–Sha then requested a formal adjudicatory hearing. She–Sha also renewed its request for a summary case by the Department pursuant to Code § 2.2–4020.1.[5] In its request, She–Sha stipulated that it was a restaurant as defined in the VICAA. By letter dated October 12, 2010, the State Health Commissioner informed She–Sha that a summary case decision was inappropriate at that time, but the Department would consolidate the summary case decision proceeding with the formal hearing She–Sha had requested.

The formal adjudicatory hearing was conducted on March 15, 2011. On May 19, 2011, the hearing officer recommended nine findings of fact and conclusions of law. On June 17, 2011, the Health Commissioner issued a case decision agreeing with and adopting the hearing officer's recommendations. The case decision upheld the violations noted in the report and

---

**5.** This "renewed request" is the only request contained in the agency record; the initial request was not included.

stated that She–Sha is a restaurant subject to the regulations of the VICAA.

She–Sha appealed the Department's decision to the Circuit Court for Montgomery County on August 12, 2011. The circuit court issued a letter opinion, and subsequent final order, holding that She–Sha is not exempt from the VICAA; therefore, it dismissed the appeal with prejudice. She–Sha then appealed to this Court.

## II. ANALYSIS

The question presented to us in this appeal is whether a retail tobacco store [6] that is also a restaurant is exempt from the provisions of the VICAA. We hold that it is.

She–Sha concedes that it is a restaurant; however, it asserts that it is also a retail tobacco store. In her final agency case decision, the Health Commissioner did not make an explicit finding regarding She–Sha's claim that it is a retail tobacco store. However, both the Virginia Department of Taxation and the Town of Blacksburg recognize that She–Sha is engaged in the retail sale of tobacco. Furthermore, on brief, and during oral argument before this Court, the Department conceded that She–Sha is both a restaurant and a retail tobacco store.[7] While we are not bound to accept concessions of law,

> [a]n entirely different paradigm, however, applies to questions of fact unique to the litigants and specific to the circumstances of each particular case.... On purely factual questions, therefore, we can and do rely on the adversarial

---

**6.** The Code of Virginia does not contain a definition of "retail tobacco store."

**7.** Specifically, the Department argues on brief: "The fundamental problem with this line of argument is that [She–Sha] is not just a retail tobacco store. It is, in its best case and as stated in its 2010 business license application, a 'restaurant and retail tobacco store.'" Appellee's Br. at 7. Moreover, at oral argument the Department stated, "Except, here, factually we have a hybrid. We do [not] have a retail tobacco store. We have a retail tobacco store and a restaurant." Oral Argument at 23:11.

process to sort out the contested and the uncontested aspects of the case before we begin our responsibility of applying *de novo* the correct legal principles.

*Logan v. Commonwealth,* 47 Va.App. 168, 172, 622 S.E.2d 771, 773 (2005).

Thus, based on the evidence before us and the Department's concessions, there can be no dispute that She–Sha is engaged in the retail sale of tobacco and that it is, at minimum, both a retail tobacco store and a restaurant.[8] The dispute arises as to whether She–Sha is exempt from regulation as a restaurant under the VICAA because of its concurrent operation as a retail tobacco store. This presents us with a question of statutory construction.

■ The Virginia Administrative Process Act ("VAPA") authorizes judicial review of agency decisions. *See* Code § 2.2–4027. Under well-settled principles, the burden is upon the party appealing such a decision to demonstrate error. *Avante at Roanoke v. Finnerty,* 56 Va.App. 190, 197, 692 S.E.2d 277, 280 (2010); *Carter v. Gordon,* 28 Va.App. 133, 141, 502 S.E.2d 697, 700–01 (1998). "Our review is limited to

---

**8.** The Department suggests that She–Sha's argument "places every restaurant in the Commonwealth in the position of being able to avoid the Act by simply selling tobacco retail." The dissent picks up on this argument by suggesting that "[w]ith today's holding, any business that prepares or serves food but also names itself a retail tobacco store could ... easily circumvent regulation under the VICAA." Infra at 630, 751 S.E.2d at 679. We reject both arguments as an overly broad reading of our opinion. While Virginia, unlike some states, does not define a retail tobacco store, it is unequivocal from the record that She–Sha's primary business is the retail sale of tobacco. *See generally* Tenn.Code Ann. § 39–17–1802(13) (defining "retail tobacco store" as "a retail store that derives its largest category of sales from tobacco products and accessories"). The uncontradicted evidence established that two-thirds of She–Sha's revenue came from the sale of tobacco and tobacco-related products. Given the facts before us, coupled with the Department's concessions, it is unnecessary to define the term "retail tobacco store." Similarly, it is unnecessary to decide at what point the sale of tobacco becomes ancillary to a restaurant's primary business of selling food products. Suffice it to say that, here, it is clear that She–Sha is doing more than "simply selling tobacco retail" or merely "nam[ing] itself a retail tobacco store."

determining (1) '[w]hether the agency acted in accordance with law;' (2) '[w]hether the agency made a procedural error which was not harmless error;' and (3) '[w]hether the agency had sufficient evidential support for its findings of fact.'" *Avante at Roanoke*, 56 Va.App. at 197, 692 S.E.2d at 280 (quoting *Johnston–Willis, Ltd. v. Kenley*, 6 Va.App. 231, 242, 369 S.E.2d 1, 7 (1988)).

▮▮▮ On appeal from an agency's determination of law, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] ... 'judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'"

*Evelyn v. Commonwealth*, 46 Va.App. 618, 624, 621 S.E.2d 130, 133 (2005) (alteration in original) (quoting *Johnston–Willis*, 6 Va.App. at 244, 369 S.E.2d at 8). Generally, however, "[a]n agency's 'legal interpretations of statutes' is accorded no deference because '[w]e have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies.'" *Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc.*, 56 Va.App. 469, 481, 694 S.E.2d 290, 296 (2010) (quoting *The Mattaponi Indian Tribe v. Commonwealth Dep't of Envtl. Quality*, 43 Va.App. 690, 707, 601 S.E.2d 667, 676 (2004)); *see also Va. Dep't of Health v. NRV Real Estate, LLC*, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009) ("Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review."). Accordingly, we conduct a *de novo* review of the agency's interpretation of the statutes in dispute. *Id.*

▮▮▮ "Statutory interpretation is a question of law which we review *de novo,* and we determine the legislative intent

from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth,* 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009). The Virginia Supreme Court has long held that "when analyzing a statute, we must assume that 'the legislature chose, with care, the words it used ... and we are bound by those words as we interpret the statute.' " *City of Virginia Beach v. ESG Enters.,* 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting *Barr v. Town & Country Properties,* 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). " 'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.' " *Tazewell County Sch. Bd. v. Brown,* 267 Va. 150, 162, 591 S.E.2d 671, 676–77 (2004) (quoting *City of Winchester v. American Woodmark Corp.,* 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)).

 If multiple sections of a statute are inconsistent or ambiguous when read together, then we "are required to harmonize any ambiguity or inconsistency in the statute to give effect to the General Assembly's intent without usurping 'the legislature's right to write statutes.' " *Parker v. Warren,* 273 Va. 20, 24, 639 S.E.2d 179, 181 (2007) (quoting *Boynton v. Kilgore,* 271 Va. 220, 229–30, 623 S.E.2d 922, 927 (2006)). Accordingly, we must give " 'every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense.' " *Epps v. Commonwealth,* 47 Va.App. 687, 714, 626 S.E.2d 912, 924 (2006) (en banc) (quoting *Posey v. Commonwealth,* 123 Va. 551, 553, 96 S.E. 771, 771 (1918)).

In 1990, the General Assembly enacted Chapter 28.2 of Title 15.2 of the Code of Virginia and entitled it "The Virginia Indoor Clean Air Act." As originally enacted, the VICAA banned smoking in various government buildings and in some public areas. *See* Code § 15.2–2824. In 2009, the VICAA was amended to also ban smoking in all restaurants and bars in

the Commonwealth, subject to certain exceptions.[9] *See* Code § 15.2–2825.[10]

The VICAA begins with a recital of various definitions in Code § 15.2–2820. Significantly, the first substantive section, Code § 15.2–2821, which is titled "Applicability," reads, in relevant part, "Nothing in this chapter shall be construed to ... [r]egulate smoking in retail tobacco stores, tobacco warehouses, or tobacco manufacturing facilities." Relying on the plain language of this provision, She–Sha argues that it is exempt from the provisions of the VICAA. The Department, on the other hand, argues that we should apply rules of statutory construction to conclude that in enacting Code § 15.2–2825, the General Assembly intended to ban smoking in any business that sells food, regardless of any other business activities it engages in.

We initially note that the exemptions [11] in Code § 15.2–2821 apply to the entire VICAA chapter, whereas the exceptions

---

9. The dissent seems to suggest that one reason the General Assembly enacted Code § 15.2–2825 was its recognition that "the regulations of the Virginia Administrative Code consider tobacco to be a contaminant." Infra at 630, 751 S.E.2d at 678. If that were true, it would seem odd that the General Assembly would expressly allow such a contaminant in: certain operations that prepare or store food for service to the public, Code § 15.2–2825(A)(1); outdoor areas of restaurants, Code § 15.2–2825(A)(2); restaurants on the premises of tobacco manufacturers, Code § 15.2–2825(A)(3); restaurants used for private functions, Code § 15.2–2825(A)(4); and areas of restaurants designated and designed as smoking areas, Code § 15.2–2825(A)(5).

10. Code § 15.2–2825 is titled, "Smoking in restaurants prohibited; exceptions; posting of signs; penalty for violation." Code § 15.2–2825(A) reads, in relevant part, "[S]moking shall be prohibited and no person shall smoke in any restaurant in the Commonwealth or in any restroom within such restaurant, except that smoking may be permitted in ... [a]ny restaurants located on the premises of any manufacturer of tobacco products." Code § 15.2–2825(A) provides various exemptions to the restaurant smoking ban. The only Code § 15.2–2825(A) exemption at issue in this case is an exemption for "restaurants located on the premises of any manufacturer of tobacco products." Code § 15.2–2825(A)(5).

11. Exemption is defined as, "Freedom from a duty, liability, or other requirement; an exception." *Black's Law Dictionary* 653 (9th ed. 2009).

listed in Code § 15.2–2825 apply only to Code § 15.2–2825. This is significant because

> [a] proper application of the "whole act interpretation" will ascribe to the exception equal power over all other provisions of the act unless it is specifically limited to particular sections. As is the case with every other section of an act, it must be interpreted as a part of the entire act, with equal power and equal authority to restrain all other provisions of the act, whether they precede or succeed the section itself.

2A Norman J. Singer, *Sutherland's Statutes & Statutory Construction* § 20:22 (7th ed. 2009).

 The Department, however, argues that the General Assembly did not intend to limit the regulation of smoking in a restaurant just because the business also engaged in the retail sale of tobacco. Specifically, the Department argues that smoking in any restaurant is prohibited unless the restaurant falls within an exemption listed in Code § 15.2–2825(A). In advancing its construction of the VICAA, the Department points to the specific exception in Code § 15.2–2825(A) for "any restaurants located on the premises of any manufacturer of tobacco products." The Department argues that because "tobacco manufacturing facilities" are also specifically listed in Code § 15.2–2821, the General Assembly intended for Code § 15.2–2825 to apply to all institutions listed in Code § 15.2–2821 unless there is a specific exemption in Code § 15.2–2825(A). The Department's argument glosses over the plain language used by the General Assembly—"nothing in this chapter shall be construed to regulate smoking in retail tobacco stores." That language makes it clear that the VICAA simply does not apply to retail tobacco stores. If we were to conclude otherwise, we would be required to engage in exactly what the plain language of Code § 15.2–2821 prohibits: we would be construing the provisions of Code § 15.2–2825 to permit the Department to regulate smoking in a retail tobacco store. This we cannot do.

Moreover, "when a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." *Ainslie v. Inman,* 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003). "Proper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes." *Hulcher v. Commonwealth,* 39 Va.App. 601, 605, 575 S.E.2d 579, 581 (2003). Indeed, " 'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.' " *Id.* at 606, 575 S.E.2d at 581 (quoting *Moreno v. Moreno,* 24 Va.App. 190, 198, 480 S.E.2d 792, 796 (1997)).

The Department's general authority to regulate restaurants is found in Chapter 2 of Title 35.1 of the Code of Virginia. That chapter unquestionably gives the Department the authority to regulate the preparation and sale of food in She–Sha. However, when the General Assembly elected to adopt a statute regulating smoking in restaurants, it chose to make that statute a part of Chapter 28.2 of Title 15.2 of the Code of Virginia.

"In interpreting a statute, we presume that the General Assembly acted with full knowledge of the law in the area in which it dealt." *Philip Morris USA Inc. v. Chesapeake Bay Found., Inc.,* 273 Va. 564, 576, 643 S.E.2d 219, 225 (2007). Therefore, we must presume the General Assembly was well aware that Chapter 28.2 exempted retail tobacco stores. Had the General Assembly intended to permit the Department to regulate smoking in any facility that prepares and sells food, it would have included such authority in Chapter 2 of Title 35.1 of the Code of Virginia, which contains no such exception. The fact that it did not evidences its intent to continue to permit smoking in a retail tobacco store despite the fact that it also operates as a restaurant.

As written, it is readily apparent that the General Assembly sought to exempt retail tobacco stores from all provisions of the VICAA. She–Sha is unquestionably a retail tobacco store.

Therefore, She–Sha is exempt from the provisions of the VICAA, including Code § 15.2–2821.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court and remand this case to the circuit court for entry of an order consistent with this opinion.

*Reversed and remanded.*

CHAFIN, J., with whom FRANK and McCULLOUGH, JJ., join, dissenting.

I respectfully dissent from the majority's holding that She–Sha, as a restaurant *and* retail tobacco store, is exempt from regulation under the VICAA. Even if we presume She–Sha is a retail tobacco store as contemplated by the General Assembly, it is not solely a retail tobacco store. It is also a restaurant. As the VICAA prohibits smoking in restaurants, I believe She–Sha is subject to regulation under the VICAA.

At issue is the application of the retail tobacco store exemption in Code § 15.2–2821 and its relation to the restaurant smoking proscription in Code § 15.2–2825. Code § 15.2–2821 states: "Nothing in this chapter shall be construed to: 1. Permit smoking where it is otherwise prohibited or restricted by other applicable provisions of law; or 2. Regulate smoking in retail tobacco stores, tobacco warehouses, or tobacco manufacturing facilities." Code § 15.2–2825 states that "smoking shall be prohibited and no person shall smoke in any restaurant in the Commonwealth," subject to limited exceptions. None of these exceptions apply to She–Sha. She–Sha argues, and the majority holds, that the language of Code § 15.2–2821 entirely exempts She–Sha from compliance with the VICAA because it is a retail tobacco store. Interpreting the statute in this manner ascribes a broad meaning to the term "retail tobacco store" that is not contextually supported and circumvents the purpose of the restaurant smoking ban.

The majority is correct that "[s]tatutory interpretation is a question of law which we review *de novo*, and we determine

the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth*, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009). "It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished." *Alston v. Commonwealth*, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (internal quotation marks omitted).

"Statutes should be construed as a whole," *City of Lynchburg v. English Constr. Co.*, 277 Va. 574, 584, 675 S.E.2d 197, 202 (2009), and "[i]f a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute, *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

Whenever possible, however, it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. A statute is not to be construed by singling out a particular phrase. Provisos, exceptions, exemptions, and grandfather clauses, although facially unambiguous in themselves, are inherently inconsistent with the spirit of the statute of which they are a part. Accordingly, where, as here, a regulatory statute is designed to promote the public welfare and the scope of the coverage intended is drawn in doubt by [an entity] claiming exemption, courts must determine what was intended.

*Virginia Electric & Power Co. v. Board of Cnty. Supervisors*, 226 Va. 382, 387–88, 309 S.E.2d 308, 311 (1983) (citations omitted). "The purpose for which a statute is enacted is of primary importance in its interpretation or construction." *Norfolk So. Ry. Co. v. Lassiter*, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952). As parts of the same act, Code §§ 15.2–2821 and 15.2–2825 must be interpreted so as not to frustrate one or the other, and so that the intended purpose of the VICAA remains intact. The majority's interpretation fails to do so.

She–Sha's argument rests solely on the exemption language of Code § 15.2–2821(2), that "[n]othing in this chapter shall be construed to ... regulate smoking in retail tobacco stores." However, it has isolated this second clause of the statute, ignoring the immediately preceding clause that "[n]othing in this chapter shall be construed to [p]ermit smoking where it is otherwise prohibited or restricted by other applicable provisions of law." Code § 15.2–2821(1). The chapter referred to by this statute is Chapter 28.2 of Title 15.2 of the Code of Virginia, which contains the VICAA provisions. She–Sha emphasizes the particular words "nothing in this chapter," and it argues that because the restaurant smoking ban is contained within the same chapter, the ban therefore does not apply to She–Sha due to the exemption clause. Through this proposition, She–Sha is attempting to take advantage of the exemption in order to "permit smoking where it is otherwise prohibited," which is prohibited by the preceding clause. If Code § 15.2–2821(2) applies to the entire chapter, so too does Code § 15.2–2821(1); and, as such, both provisions apply equally in determining the applicability of the VICAA.

Thus, to be internally consistent, the reasonable interpretation of this particular statute is that a retail tobacco store may be exempt from regulation, so long as said exemption would not permit smoking somewhere that it would otherwise be prohibited. Smoking is "otherwise prohibited" in restaurants by Code § 15.2–2825. Applying this interpretation to these sections gives "full effect to all the statutory language," *Moreno v. Moreno,* 24 Va.App. 190, 197, 480 S.E.2d 792, 796 (1997), "harmoniz[ing] the provisions of [the] statute both internally and in relation to" the VICAA as a whole, *Hulcher v. Commonwealth,* 39 Va.App. 601, 605, 575 S.E.2d 579, 581 (2003).

In addition to being internally consistent, an interpretation of Code § 15.2–2821 must be consistent with the VICAA as a whole. The purpose of the VICAA can be drawn from its name: to ensure clean indoor air for the citizenry of the Commonwealth. Fines collected as a result of VICAA violations go to the Virginia Health Care Fund, *see* Code § 15.2–2825(H), which is "used solely for the provision of health care

services," Code § 32.1–367. It is undoubtedly a public health initiative. We are aware, and so too is the General Assembly, that the food regulations of the Virginia Administrative Code consider tobacco to be a contaminant. *See* 12 VAC 5–421–220(A) (requiring employees to "use any form of tobacco only in designated areas where the contamination of exposed food; clean equipment, utensils, and linens; unwrapped single-service and single-use articles; or other items needing protection cannot result"); 12 VAC 5–421–3140 (stating that "[a]reas designated for employees to . . . use tobacco shall be located so that food, equipment, linens, and single-service and single-use articles are protected from contamination").

In the VICAA, the legislature chose with care the specific public areas within which it wanted to restrict exposure to tobacco smoke. *See* Code § 15.2–2823 through –2825. Restaurants are clearly one of those public areas. While most areas subject to the VICAA smoking regulations are listed in Code § 15.2–2824, restaurants have been singled out into an entirely separate provision of their own: Code § 15.2–2825. Interpreting the VICAA as the majority has done, however, strips the significance from the legislative choice to expressly prohibit smoking in restaurants. With today's holding, any business that prepares or serves food but also names itself a retail tobacco store could, without any attempt at compliance, easily circumvent regulation under the VICAA.

As currently written, the statute provides no definition or determinative characteristics as to what would qualify as a retail tobacco store. Further, a retail tobacco store that serves food like traditional restaurants is not simply one or the other, but is a hybrid with the characteristics of both. Though the majority believes it is unnecessary to define the term "retail tobacco store" due to the Department's concessions regarding She–Sha's business, the meaning of the term is important for determining what the legislature intended the exemption to encompass. In the absence of such a concession, we are left with a case-by-case determination of what qualifies as a retail tobacco store. The plain meaning of "retail store" is "a place of business usu[ally] owned and operated by a

retailer but sometimes owned and operated by a manufacturer or by someone other than a retailer in which merchandise is sold primarily to ultimate consumers." *Webster's Third New International Dictionary* 1938 (2002). The meaning of "retail" standing alone is "to sell in small quantities." *Id.* If selling small quantities of tobacco to ultimate consumers is enough to be considered a retail tobacco store under the statute, then any restaurant could avoid having to comply with the VICAA by simply selling packs of cigarettes from behind the counter. Any sales of tobacco products would suffice. This plain meaning interpretation creates a minimal threshold with the potential for an absurd result. I do not believe this was the legislature's intent.

The majority does not spell out when a restaurant also qualifies as a retail tobacco store so as to be entirely exempt from the VICAA. At best, therefore, the majority's holding will result in confusion and additional litigation. At worst, the majority's decision will undermine the salutary public health objectives that motivated the General Assembly to enact the VICAA. Although customers of such establishments would remain free to take their business elsewhere, the employees of such restaurants are likely to have far less choice—and far more exposure to tobacco smoke.

In light of the foregoing considerations, the more reasonable interpretation of Code § 15.2-2821, when read in context as one part of the whole VICAA, is that retail tobacco stores are exempt from the VICAA if they are solely that: a retail tobacco store. Where such an establishment overlaps with a public area that the legislature has chosen to specifically regulate, subject to limited exceptions, the purpose of the VICAA is better served by narrowly construing the exemption to apply to entities where smoking would not be otherwise prohibited under the statute. For these reasons, and because She–Sha is not solely a retail tobacco store, I believe She–Sha is not exempt from complying with the VICAA and I would affirm the circuit court's decision.