PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Russell, S.J.

VIRGINIA DEPARTMENT OF HEALTH

                                           OPINION BY
v.  Record No. 140100              JUSTICE WILLIAM C. MIMS
                                        January 8, 2015
KEPA, INC., d/b/a SHE-SHA CAFÉ AND
HOOKAH LOUNGE

                FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the Court of Appeals

erred in construing the Virginia Indoor Clean Air Act to exempt

a retailer of tobacco and tobacco products from regulation,

despite the fact that it also serves food.

          I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

   A. Background

     Kepa, Inc. has owned and operated She-Sha Café and Hookah

Lounge ("She-Sha") in Blacksburg since 2003.  She-Sha sells

tobacco and tobacco products to its customers.  Customers may

purchase tobacco to smoke on-site through "hookahs," which are

available for rent at the café, or to smoke off-site.[1]  It also

sells food for on-site consumption in the same area where

tobacco is smoked.

     She-Sha is licensed as a "Food Establishment,"

specifically a "Full Service Restaurant," by the Virginia

---

[1] A "hookah" is a "pipe for smoking that has a long flexible tube whereby the smoke is cooled by passing through water." Webster's Third New International Dictionary 1088 (1993).

Department of Health ("Department").  It is also licensed as an "Other Tobacco Product Retailer" by the Virginia Department of Taxation.  On its business license application to the Town of Blacksburg, She-Sha lists the nature of its business as "Restaurant and Retail Tobacco Store."

On January 22, 2010, the Montgomery County Health Department received a complaint indicating that She-Sha was allowing customers to smoke in its restaurant in violation of the Virginia Indoor Clean Air Act, Code § 15.2-2820 et seq. ("VICAA"), which went into effect on December 1, 2009.  VICAA makes smoking in restaurants generally unlawful, subject to six narrow exceptions.  Code § 15.2-2825(A)(1) through (A)(6).  On January 27, 2010, the Department conducted an investigation and subsequently charged She-Sha with two violations.[2]

B. Relevant Statutory Provisions and Material Proceedings Below

At issue in this appeal is the proper interpretation of two statutory provisions from VICAA that appear to conflict when applied to She-Sha.  First, Code § 15.2-2821, which states VICAA's general applicability, provides:

---

[2] The Department charged She-Sha with violating Code § 15.2-2825(D), which requires restaurants to post "No Smoking" signs in non-smoking areas, and Code § 15.2-2825(F), which prohibits smoking in any non-smoking area of a restaurant.  She-Sha agrees that it had not posted any "No Smoking" signs and that it had not divided its establishment into smoking and non-smoking areas.

Nothing in this chapter shall be construed to:

1. Permit smoking where it is otherwise prohibited or restricted by other applicable provisions of law; or

2. Regulate smoking in retail tobacco stores, tobacco warehouses, or tobacco manufacturing facilities.

Next, Code § 15.2-2825, which prohibits smoking in restaurants, provides in relevant part:

A. Effective December 1, 2009, smoking shall be prohibited and no person shall smoke in any restaurant in the Commonwealth or in any restroom within such restaurant, except that smoking may be permitted in:

. . . .

3. Any restaurants located on the premises of any manufacturer of tobacco products;

. . . .

5. Any portion of a restaurant that is constructed in such a manner that the area where smoking may be permitted is (i) structurally separated from the portion of the restaurant in which smoking is prohibited and to which ingress and egress is through a door and (ii) separately vented to prevent the recirculation of air from such area to the area of the restaurant where smoking is prohibited.

It is also relevant to note that, for the purposes of VICAA, a "Restaurant" is "any place where food is prepared for service to the public on or off the premises, or any place where food

is served."  Code § 15.2-2820.  However, the term "retail tobacco store" is undefined in the Act.

She-Sha requested an informal hearing to contest the charges.  On July 8, 2010, the Department upheld the violations, stating that She-Sha was "properly labeled as a restaurant" and that none of the exceptions in VICAA applied to the establishment.

After the informal hearing, She-Sha requested a formal hearing pursuant to the Virginia Administrative Process Act, Code § 2.2-4000 et seq.  At the hearing, She-Sha claimed it was a "retail tobacco store," and thus, exempt from regulation under VICAA as provided in Code § 15.2-2821(2).  She-Sha presented evidence, which the Department did not contest, that it derived approximately two-thirds of its revenue from tobacco-related sales.

In his findings of fact and conclusions of law, the hearing officer noted that the Department's official interpretation of Code § 15.2-2825 treats all establishments meeting the definition of a "restaurant" in Code § 15.2-2820 as

4

subject to regulation under VICAA.[3]  The hearing officer also found that the General Assembly had "specifically exempted stand alone retail tobacco stores and restaurants operation [sic] on the premises of tobacco manufacturing facilities."  He reasoned that, by not specifically exempting "restaurants operating within retail tobacco stores," the General Assembly had signaled its intent to regulate establishments such as She-Sha.  The State Health Commissioner concurred with the recommendations contained in the letter and upheld the charged violations.

She-Sha appealed the Department's decision to the Circuit Court of Montgomery County.  After considering the record compiled during the administrative proceedings and the oral arguments of both parties, the circuit court ruled that VICAA did not provide an exemption for She-Sha's establishment.  Thus, the circuit court found that the Department did not make an error of law when it interpreted VICAA to regulate hookah bars that serve food in areas where smoking occurs.

Next, She-Sha pursued its case to the Court of Appeals.  A three-judge panel affirmed the circuit court by a 2-1 vote in a

---

[3] Department Program Implementation Manual 09-02 states that "[h]ookah bars are subject to the [smoking] ban if they prepare and serve food." Virginia Department of Health, Program Implementation Manual #09-02, at 6 (Sept. 17, 2009).  It also notes that a hookah bar may continue to serve food if it erects "a structural separation between the non-smoking area and the smoking areas."  Id.

published opinion.  Kepa, Inc. v. Virginia Dept. of Health, 61 Va. App. 696, 740 S.E.2d 26 (2013) (Kepa I).  The majority found that to adopt She-Sha's reading of Code § 15.2-2821, and exempt She-Sha from regulation as a "retail tobacco store," would force a conflict with Code § 15.2-2825.  Id. at 707, 740 S.E.2d at 32.  Noting that a court interpreting "multiple, related statutory provisions must give full effect to each provision while remaining true to the purpose and intent behind them," the majority concluded that the General Assembly did not intend to provide an exemption to "retail tobacco stores not operating exclusively as such."  Id.

The majority began with the premise that, "[a]s a restaurant, She-Sha must comply with the restaurant smoking ban, unless it falls within one of the six expressly stated exemptions."  Id. at 704, 740 S.E.2d at 30.  It then turned to the exemptions listed under Code § 15.2-2825(A)(1)-(6), focusing in particular on Code § 15.2-2825(A)(3), which specifically exempts "[a]ny restaurants located on the premises of any manufacturer of tobacco products."  Drawing on the maxim "expressio unius est exclusio alterius," the majority reasoned that the express exemption of tobacco manufacturers, and corresponding omission of tobacco retailers, signaled an intent to regulate restaurants on the premises of tobacco retailers. Id. at 706, 740 S.E.2d at 31.  To conclude otherwise, the

6

majority continued, would allow She-Sha to "circumvent the statutory obligations associated with being a restaurant." Id. at 707, 740 S.E.2d at 32.

Then, She-Sha petitioned the full Court of Appeals for a rehearing en banc. In a 6-3 decision, the Court of Appeals overruled the panel, holding that She-Sha, as a restaurant, was exempt from VICAA because it is also a retail tobacco store. Kepa, Inc. v. Virginia Dept. of Health, 62 Va. App. 614, 617, 751 S.E.2d 671, 672 (2013) (Kepa II).

Again, the majority found that Code §§ 15.2-2821 and -2825 were "inconsistent or ambiguous when read together" and sought to harmonize the provisions. Id. at 623, 751 S.E.2d at 675. This time, the majority declined to infer that the General Assembly signaled its intent to regulate restaurants located on the premises of a retail tobacco store by not providing a specific exemption under Code § 15.2-2825. Id. at 625, 751 S.E.2d at 676. Rather, the majority found that the plain language of Code § 15.2-2821 clearly indicated that VICAA did not apply to retail tobacco stores. Id.

The majority further concluded that Code § 15.2-2821 trumped Code § 15.2-2825, because "[h]ad the General Assembly intended to permit the Department to regulate smoking in any facility that prepares and sells food, it would have included such authority in Chapter 2 of Title 35.1," which generally

7

authorizes the Department to regulate restaurants.  Id. at 626, 751 S.E.2d at 677.  In a footnote, the majority also noted that "She-Sha's primary business is the retail sale of tobacco," suggesting that the percentage of revenue attributable to such sales should guide the inquiry into whether Code § 15.2-2821 exempts an establishment from regulation.  Id. at 621 n.8, 751 S.E.2d at 674 n.8.

The dissent argued that the interpretation adopted by the majority "ascribes a broad meaning to the term 'retail tobacco store' that is not contextually supported."  Id. at 627, 751 S.E.2d at 677 (Chafin, J., dissenting).  As a result, the dissent contended, the majority opinion elevated Code § 15.2-2821(2) at the expense of Code §§ 15.2-2821(1) and -2825, thereby permitting smoking where it is "otherwise prohibited" and frustrating the public policy behind VICAA.  Id. at 629-30, 751 S.E.2d at 678 (noting that VICAA is "undoubtedly a public health initiative").  Moreover, the dissent took issue with the majority's failure to define "retail tobacco store," and asserted that the opinion would permit any restaurant to avoid VICAA by merely selling packs of cigarettes.  Id. at 630-31, 751 S.E.2d at 679.

The Department's appeal to this Court followed.

8

## II. DISCUSSION

### A. Standard of Review

"[W]e give deference to the decisions of administrative agencies when those decisions 'fall within an area of the agency's specialized competence.'" Virginia Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 380, 757 S.E.2d 1, 5 (2014) (quoting Virginia Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009)). "'However, when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts.'" Id. (quoting Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005)). This appeal presents a pure question of statutory construction which we review de novo. Id.

### B. The Parties' Arguments

On appeal, the parties presented the same arguments that they advanced at each stage below. The parties do not dispute that, by definition, She-Sha operates a restaurant and a retail tobacco store on its premises. The only dispute between the parties is how to read and apply Code §§ 15.2-2821 and -2825 given She-Sha's dual business identities.

The Department argues that She-Sha is not exclusively a retail tobacco store, so Code § 15.2-2821 does not apply.

9

Rather, it contends that She-Sha is a restaurant as defined by VICAA, and therefore, it is subject to regulation under Code § 15.2-2825. In support, the Department points to Code § 15.2-2821(1), which it reads to disallow the exemption in subsection (2) if an establishment is otherwise subject to regulation under VICAA. The Department also invokes the maxim "expressio unius est exclusio alterius" to construe the two provisions together. It argues that by expressly providing an exemption for "tobacco manufacturing facilities" in Code § 15.2-2825, but not for "retail tobacco stores" or "tobacco warehouses," the General Assembly signaled its intent to regulate restaurants operating on the premises of such stores or warehouses. Finally, the Department argues that She-Sha's interpretation will ultimately require courts to graft a "primary purpose test" onto VICAA, whereby courts must determine which aspect of the business predominates.

She-Sha argues that the plain language of Code § 15.2-2821 exempts a retail tobacco store from all smoking regulations even if the store is also a "restaurant" as defined by VICAA. First, it contends that Code § 15.2-2821(1) means that nothing in VICAA should operate by negative inference to permit smoking where it is otherwise prohibited by other applicable provisions of law "outside the chapter." Thus, She-Sha posits that subsection (1) does not invite conflict with Code § 15.2-2825,

10

because it provides a rule for applying VICAA to other, external smoking prohibitions, while subsection (2) provides a rule for applying the smoking regulations contained within VICAA. Consequently, She-Sha asserts that subsection (2) forbids the application of any VICAA regulation to an entity that could "fairly be described as a retail tobacco store." Thus, although Code § 15.2-2825 prohibits smoking in restaurants, Code § 15.2-2821 preemptively exempts retail tobacco stores from regulation under VICAA. Finally, She-Sha argues that the Department misapplied the maxim "expressio unius est exlusio alterius" to Code § 15.2-2825(A), because the Department failed to account for the difference in language between Code § 15.2-2821(2) ("manufacturing facilities") and Code § 15.2-2825(A)(3) ("premises of any manufacturer").

C. Whether Code § 15.2-2821 Exempts She-Sha from Regulation Under Code § 15.2-2825

"The primary objective in statutory construction is to determine and give effect to the intent of the legislature as expressed in the language of the statute." Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012) (citing Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 99-100, 546 S.E.2d 696, 702 (2001)). "If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent

11

behind the statute." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (collecting cases). Moreover, "where, as here, a regulatory statute is designed to promote the public welfare and the scope of the coverage intended is drawn in doubt by a regulated [business] claiming exemption, courts must determine what was intended." Virginia Electric & Power Co. v. Board of Cnty. Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983).

With these principles in mind, and for the four reasons stated below, we agree with the Department that Code § 15.2-2825 applies to She-Sha.

1. Code § 15.2-2821 Recognizes a Three-Tier Industry and Code § 15.2-2825 Exempts Only One Tier from Regulation

She-Sha, and the Court of Appeals in Kepa II, appears to begin with the premise that Code § 15.2-2821(2) applies to its business model. That premise is not supported by the statutory framework. Nothing in subsection (2) references a "retail tobacco store and restaurant." Even so, She-Sha suggests that subsection (2) precludes regulation of its restaurant because the restaurant is "in" the retail store. On brief, She-Sha identifies Code § 15.2-2824(A)(i), which prohibits smoking in elevators, and it notes that Code § 15.2-2821(2) overrides that prohibition if the elevator is in a retail tobacco store. Thus, She-Sha suggests that we should treat the restaurant the

12

same way that we would treat an elevator within a retail tobacco store and exempt it from regulation under Code § 15.2-2825.  Of course, this analogy ignores fundamental differences between an elevator and a restaurant.  Moreover, the analogy relies on the premise that Code § 15.2-2821(2) applies to its business model in the first place.  The analogy is not sustainable because She-Sha's business identity as a restaurant is not separate from its business identity as a retail tobacco store: the restaurant and the retail tobacco store are one and the same.  Therefore, we cannot, and do not, begin with the premise that Code § 15.2-2821(2) applies to exclude regulation within She-Sha's establishment.

Rather, we begin by noting that Code § 15.2-2821 defines VICAA's general applicability.  The statute, in full, provides that:

> Nothing in this chapter shall be construed to:
>
> 1. Permit smoking where it is otherwise prohibited or restricted by other applicable provisions of law; or
>
> 2. Regulate smoking in retail tobacco stores, tobacco warehouses, or tobacco manufacturing facilities.

Thus, the General Assembly clearly recognized three tiers within the tobacco industry: manufacturing, shipping and storage, and retail, and it exempted such businesses from

13

regulation under VICAA. Yet, the General Assembly only addressed manufacturers in Code § 15.2-2825(A). The section does not address restaurants located on the premises of tobacco warehouses or tobacco stores. In relevant part, the statute provides that:

> [S]moking shall be prohibited and no person shall smoke in <u>any</u> restaurant in the Commonwealth or in any restroom within such restaurant, except that smoking may be permitted in:
>
> . . . .
>
> 3. Any restaurants located on the premises of any manufacturer of tobacco products . . . .

Code § 15.2-2825(A)(3) (emphasis added). By its plain language, Code § 15.2-2825(A) applies to "any restaurant" without exception other than those specifically enumerated in subsections (A)(1) through (A)(6). By contrast, Code § 15.2-2821(2) deals generally with certain exempt businesses within the tobacco industry. In our view, subsection (A)(3) shows that the General Assembly considered the distinct possibility that a restaurant could be located in or on the premises of an exempted store, warehouse, or manufacturing facility, and elected to exempt only one of the three.[4] "[W]hen one statute

_____

[4] She-Sha's argument that the term "premises" must necessarily mean something other than a "manufacturing facility" assumes a "gap" left by Code § 15.2-2821 that would need to be construed away. See Kepa I, 61 Va. App. at 713, 740 S.E.2d at 35 (Petty,

14

speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails."  Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979) (citations omitted).

Section 15.2-2825(A) specifically prohibits smoking in "any restaurant," which in turn is "any place where food is served," regardless of its location or the nature of business it is combined with.  See Code § 15.2-2820 (defining "Restaurant").  The term "retail tobacco store" does not connote the degree of inclusivity that the General Assembly specifically attributed to a "restaurant."  The General Assembly could have specifically exempted "retail tobacco stores" and "tobacco warehouses" in the same manner that it exempted manufacturers in Code § 15.2-2825(A)(3).  It did not. By omitting stores and warehouses from the exemptions in Code § 15.2-2825(A), the General Assembly signaled its intent to treat such establishments differently under VICAA.

J., dissenting) (construing "premises" to "presumably" fill a gap in Code § 15.2-2821).  However, the General Assembly made no effort to fill the supposed gap in the case of tobacco retail stores or warehouses.  Thus, She-Sha's interpretation is redundant to the extent that the "premises" include the "manufacturing facility."  To the extent "premises" include property in addition to the "manufacturing facility," it introduces ambiguity that would require even more harmonization.

2. Code § 15.2-2825(A)(5) Reflects a Balanced Approach to Regulating Smoking in Restaurants

Next, we note that Code § 15.2-2825(A)(5) clearly accommodates businesses that would like to operate a restaurant and allow smoking therein, such as She-Sha.  After the introductory clause prohibiting smoking in "any restaurant," subsection (A)(5) goes on to permit smoking in:

> Any portion of a restaurant that is constructed in such a manner that the area . . . is (i) structurally separated from the portion of the restaurant in which smoking is prohibited and to which ingress and egress is through a door and (ii) separately vented to prevent the recirculation of air from such area to the area of the restaurant where smoking is prohibited.

This provision balances VICAA's public health initiatives with the interests of businesses that cater to the smoking public. Subsection (A)(5) allows She-Sha to accommodate its patrons who wish to smoke and eat at the same time, as long as it provides a separate nonsmoking area.  Thus, the General Assembly created viable options for businesses that sell both tobacco and food for on-site consumption.

The Court of Appeals in Kepa II never considered subsection (A)(5), and thus, failed to construe the statute as a whole.  See City of Lynchburg v. English Constr. Co., 277 Va. 574, 584, 675 S.E.2d 197, 202 (2009).  Indeed, the majority in Kepa II stated that "[t]he only Code § 15.2-2825(A) exemption

16

at issue in this case is an exemption for 'restaurants located on the premises of any manufacturer of tobacco products.'"  62 Va. App. at 624 n.10, 751 S.E.2d at 675 n.10.  By neglecting the applicability of subsection (A)(5), the Court of Appeals failed "to give force and effect" to each provision.  City of Lynchburg, 277 Va. at 584, 675 S.E.2d at 202. Had it done so, it would have recognized that the General Assembly did create an exception that allows hybrid restaurant and retail tobacco establishments to conduct both aspects of their business simultaneously, thereby obviating the need to draw a bright line between retail tobacco store and restaurant.[5]

3. VICAA Does Not Contain a Primary Business Purpose Test and Courts May Not Graft Such a Test onto the Act

As we have already noted, She-Sha's restaurant and She-Sha's retail store are one and the same.  Yet, She-Sha and the Court of Appeals would fashion an exemption for restaurants in retail tobacco stores, or more accurately, an exemption for combination restaurant/retail tobacco stores, provided that the

---

[5] The majority below suggests that if the General Assembly had wanted to authorize "the Department to regulate smoking in any facility that prepares and serves food, [then] it would have included that authority in Chapter 2 of Title 35.1."  Kepa II, 62 Va. App. at 626, 751 S.E.2d at 677.  This disregards the definition of a "restaurant" in VICAA, which is broad enough to authorize the Department to regulate smoking in any such facility through Code § 15.2-2825(A).  See Code § 15.2-2820 (defining restaurant to mean "any place where food is prepared for service to the public . . . or any place where food is served").

17

"primary business is the retail sale of tobacco." <u>Kepa II</u>, 62 Va. App. at 621 n.8, 751 S.E.2d at 674 n.8.

The term "retail tobacco store" is not defined anywhere in VICAA. Moreover, construing "retail tobacco store" broadly would invite any restaurant to avoid VICAA by selling tobacco at retail or re-branding itself as a retail tobacco store that happens to prepare and sell food. She-Sha protests that courts could look through a business' self-representation to ensure that the "core business model is based upon its sale of tobacco to the consuming public."

In <u>Kepa II</u>, the majority adopted this argument. It decided that resolving the practical issue raised by its interpretation was "unnecessary" because "She-Sha's primary business is the retail sale of tobacco," and thus the opinion could be limited to similar scenarios. 62 Va. at 621 n.8, 751 S.E.2d at 674 n.8. However, the "primary business" test does not appear anywhere in VICAA. When construing a statute, "we are not free to add to language, nor to ignore language, contained in statutes." <u>BBF, Inc. v. Alstom Power, Inc.</u>, 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (internal quotation marks, alteration, and citation omitted). There is no statutory support for defining what is, or what is not, a "retail tobacco store" based on an establishment's "primary business." Consequently, there is no statutory support for

18

construing Code § 15.2-2821(2) to exempt businesses that are not <u>exclusively</u> retail tobacco stores.

4. The Purpose of VICAA is to Promote Public Health

"The purpose for which a statute is enacted is of primary importance in its interpretation or construction." <u>Virginia Electric & Power Co.</u>, 226 Va. at 388, 309 S.E.2d at 311 (internal quotation marks and citation omitted). As the dissent below recognized, VICAA "is undoubtedly a public health initiative." <u>Kepa II</u>, 62 Va. App. at 630, 751 S.E.2d at 678 (Chafin, J., dissenting). The plain language of VICAA clearly shows that the General Assembly intended VICAA to promote the health of the Commonwealth by reducing exposure to second hand smoke in public places. The enforcement framework buttresses that conclusion.[6]

VICAA promotes clean indoor air in public places, and it promotes clean indoor air for the customers <u>and</u> employees of such places. Not all employees have the luxury of working in their preferred work environment, yet they must work, and the General Assembly has determined that they should be able to

---

[6] Under Article 2 of VICAA ("Statewide Regulation of Smoking"), all fines collected pursuant to its provisions are paid into the Virginia Health Care Fund, which is "used solely for the provision of health care services." Code § 32.1-367. And under Article 3 ("Local Regulation of Smoking"), all fines collected pursuant to local ordinances are paid into local treasury and "shall be expended solely for public health purposes." Code § 15.2-2833(D).

work in an environment that limits their exposure to second hand smoke if that concerns them. Construing Code § 15.2-2821(2) broadly to include "retail tobacco stores and restaurants" would frustrate the purpose of VICAA and roll back its protections for restaurant customers and employees throughout Virginia, and not just in a single hookah bar in Blacksburg.

III. CONCLUSION

For the reasons stated, we hold that Code § 15.2-2821 does not exempt She-Sha from regulation under Code § 15.2-2825, because it is not exclusively a retail tobacco store.[7] The General Assembly authorized the Department to regulate smoking in "any restaurant," defined broadly as "any place where food is served," except as permitted by Code § 15.2-2825(A)(1)-(6). We will not lightly create a judicial exception to such broad language so as to frustrate the General Assembly's public health purpose. Therefore, we reverse the judgment of the Court of Appeals and enter final judgment.

Reversed and final judgment.

---

[7] Because we find that Code § 15.2-2821(2) is inapplicable to She-Sha, we do not decide whether Code § 15.2-2821(1) would require Code § 15.2-2825 to preempt Code § 15.2-2821(2).

20

JUSTICE McCLANAHAN, dissenting.

I dissent for the reasons stated by the Court of Appeals' majority in the decision below, Kepa, Inc. v. Virginia Dep't of Health, 62 Va. App. 614, 751 S.E.2d 671 (2013)(en banc).